PATRICK McGRATH, administrator, *vs.* JAMES REYNOLDS & others.

Essex.    Nov. 6, 1874. — Jan. 9, 1875.    AMES & DEVENS, JJ., absent.

A written instrument, not duly attested as a will, by which a sum of money is given to another for certain purposes named, which is signed and delivered in expectation of death by the party at whose request it is made, and which is shown by the attending circumstances not to be intended as passing a gift *inter vivos*, cannot give effect to the intended gift as a *donatio causa mortis*.

A man, in expectation of death, caused a written instrument to be made by which he gave to A. a stated sum of money for certain purposes named, and for the purpose of carrying out its provisions delivered to him a savings bank book with an order for the payment of the deposits, which made up only a smaller portion of the sum named in the instrument. The donor, when asked by A. where the remainder was, said it was in his trowsers' pocket, turning in his bed and looking towards the closet in which the trowsers were, and that E., who owned the house and who was present, would give it to him. After the donor's death, E. delivered the money to A. *Held*, that there was no sufficient delivery of the money to give effect to the gift as a *donatio causa mortis*, and that it could not take effect otherwise than as an entire gift.

BILL IN EQUITY to obtain the instructions of the court as to the disposition of certain funds alleged to have been placed in the plaintiff's hands by Bernard Reynolds, as a *donatio causa mortis*. The case was reserved by *Colt*, J., for the consideration of the full court, upon the bill and answers and a report, and appeared to be as follows :

Bernard Reynolds on September 23, 1873, sent for the plaintiff to come to him at Salem, where he was then lying very sick and

in expectation of death. The plaintiff accordingly went to Salem and found Reynolds in bed in his room at the house of his sister, Ellen Gaffney, where he had been boarding for some three or four years. Reynolds then stated to the plaintiff that he had some money which he wished him to divide among his, Reynolds's, relations. The plaintiff, after some objection, took a piece of paper and wrote at Reynolds's direction as follows: "Salem, Sept. 23, 1873. I give to Patrick McGrath $5758, to be divided as follows : " he then, also at Reynolds's direction, wrote the names of certain relatives of Reynolds, and then wrote against their names respectively certain sums of money. This paper Reynolds then signed and handed to McGrath. Reynolds then produced two savings bank books of the Emigrant Savings Bank of Boston, each showing a deposit of $900, and both in Reynolds's name, and requested McGrath to fill out the blank orders printed in the books for the payment to McGrath of the amounts deposited, which McGrath accordingly did. The orders were then signed by Reynolds, and the books and orders delivered by him to McGrath, in whose possession they have been up to the present time.

McGrath then, perceiving that the amount in the bank books fell short of $5758 mentioned in the paper above referred to, asked Reynolds where the rest of the money was ; Reynolds told him that it was in his trowsers' pocket, turning at the same time in the bed and looking towards the closet in which the trowsers were then hanging, and that Ellen would give it to him. There was then in the trowsers' pocket the sum of $3850. Ellen, his sister, was then present and heard the question and answer, and had previously been informed by Reynolds where the money was. McGrath then took the books to the bank for the purpose of drawing the money, but it being represented to him that he would lose some of the interest by drawing it at that time, he requested to have the amounts assigned to him. One of the officers of the bank informed him that this could not be done upon the orders produced, but drew a form of assignment, which McGrath sent to Reynolds. Reynolds signed and gave it to his sister, with directions to give it to McGrath, and this she did after Reynolds's death. Reynolds died the morning of September 27, 1873. In the evening of that day Ellen Gaffney took

the money, amounting to $3850, as above stated, from his trow-sers' pocket, and placed it in her own trunk, and about three weeks after Reynolds's death delivered it to McGrath.

The bank having declined to pay over any money after the death of Reynolds, McGrath was appointed administrator of Reynolds's estate, January 6, 1874. He had already paid over to two of the persons mentioned in the paper the sums set opposite their names, before he had notice that the parties interested, or any of them, intended to raise any question as to the disposition of the funds intrusted to him.

Upon these facts the case was reserved for the consideration of the full court, such order or decree to be made as the nature of the case requires.

*J. A. Gillis*, in support of the gift.

*S. B. Ives, Jr. & C. W. Richardson*, contra.

WELLS, J. The writing signed by Reynolds cannot operate as a will, for want of attestation. The testamentary purpose, however, is so manifest, especially in connection with the attending circumstances and the declarations of Reynolds, as to forbid giving it effect as a transfer by way of gift *inter vivos*. It can be regarded only as an attempt to make a gift *mortis causa;* and it is so set forth in the bill.

As a gift *mortis causa*, it is not aided by the execution of the written instrument, except so far as that may contribute to greater certainty in the proofs. Such gifts cannot be effected by formal instruments of conveyance or assignment. They are manifested by, and take their effect from, delivery. They can therefore only be of such articles of personal property as are capable of transmission by delivery alone, so far at least as to confer a right or title which equity will protect and enforce. They require actual delivery or its equivalent. Symbolical or constructive delivery is not sufficient. *Parish* v. *Stone*, 14 Pick. 198, 203. *Sessions* v. *Moseley*, 4 Cush. 87, 92. *Rockwood* v. *Wiggin*, 16 Gray, 402. *Marshall* v. *Berry*, 13 Allen, 43. *Coleman* v. *Parker*, 114 Mass.    . See also cases cited in 2 Redfield on Wills, 302 *& seq.*, and 1 Lead. Cas. in Eq., 583, notes to *Ward* v. *Turner*.

The greater part of the subject of the gift in this case was in money. There was no manual tradition of the money, and the

occurrences at the time of the supposed gift do not furnish an equivalent for delivery. The donor informed the donee where it was, and that his sister, who was present, would give it to him. But there was no change of possession or control until after the death of the donor, when it was too late to make a delivery under the authority which the words of the donor would imply. Even if we regard the sister as the agent of the donee to receive and hold the money for the purposes of the intended gift to him, it does not relieve the difficulty; because she did not assume the possession and control of the money until after the decease of the donor. It does not follow because it was in her own house, where her brother was a boarder, that it was virtually in her possession at the time; and that inference is excluded by the fact that it was in a pocket in his personal clothing; and by the affirmative statement that she " had previously been informed by Reynolds where the money was."

We are forced to the conclusion, therefore, that there was a failure to make the intended gift effectual in law, by reason of an omission to perfect it by delivery of the money. As there was no intention to make the gift otherwise than as a whole, the failure of the principal part must defeat the whole. We cannot regard the delivery of the bank books as a delivery of part in the name of the whole so as to make the whole gift effectual. We need not consider the question whether the deposits in the savings banks would pass as *donatio causa mortis*, by delivery of the books with the order of payment or the assignments, if disconnected from the rest of the scheme. The intended gift was not of those deposits or books specifically, but of a definite larger fund; and the books were delivered merely as means in part to carry out the entire purpose. That purpose failing, there is no intended gift of which the delivery of those books is an appropriate manifestation.

The result is, that the plaintiff must hold the funds as administrator. *Instructions accordingly.*