[In Bank. — November 28, 1883.]

JOHN DANIEL ET AL., RESPONDENTS, *v.* HOLLAND SMITH, ADMINISTRATOR OF THE ESTATE OF ABRAHAM FIELDING, DECEASED, ET AL., APPELLANTS.

GIFT CAUSA MORTIS — TRANSFER OF POSSESSION. — An actual transfer of the possession of the property to the donee, or to some person for his use, is essential to the validity of a gift *causa mortis.*

APPEAL from a judgment of the Superior Court of the city and county of San Francisco, and from an order refusing a new trial.

The facts are stated in the opinion of the court.

*Nathaniel Holland,* and *Joseph Leggett,* for Appellants, cited *Reddel* v. *Dobree,* 10 Sim. 244; *Badley* v. *Hunt,* 23 Am. Dec. 599; *Taylor* v. *Henry,* 48 Md. 550; *Hatch* v. *Atkinson,* 56 Me. 324; *Irish* v. *Nutting,* 47 Barb. 383; *Curry* v. *Powers,* 70 N. Y. 212; *Tillinghast* v. *Wheaton,* 8 R. I. 536; *Hill* v. *Stevenson,* 63 Me. 364; *Wells* v. *Tucker,* 3 Binn. 366; *Hamor* v. *Moore's Adm'r.* 8 Ohio St. 242; *Fiero* v. *Fiero,* 5 Thomp. & C. 151; *McGrath* v. *Reynolds,* 116 Mass. 566.

*F. J. French,* and *John M. Burnett,* for Respondents, cited *Hill* v. *Stevenson,* 63 Me. 364; *Camp's Appeal,* 36 Conn. 88; *Grymes* v. *Hone,* 49 N. Y. 21; *Foster* v. *Mansfield,* 3 Met. 412; *Sessions* v. *Moseley,* 4 Cush. 87; *Pierce* v. *Boston Savings Bank,* 129 Mass. 425; *Vandermark* v. *Vandermark,* 55 How. Pr. 408.

THORNTON, J. — This action was brought to recover of the Hibernia Savings and Loan Society a sum of money specified in the complaint. A claim to this money was set up by Holland Smith, as the administrator of the estate of Abraham Fielding, deceased, and he was made a defendant that the validity of his claim as against the plaintiffs might be determined. Judgment was rendered for the plaintiffs, and Smith moved for a new trial, which was denied, thereupon Smith appealed from the judgment and order denying a new trial.

The sole question to be determined is whether the money sued for was given to Emma Daniel, wife of her co-plaintiff, by Abraham Fielding, in view of death. This must be determined upon the evidence adduced on the trial of this cause.

The plaintiffs proved that Fielding died on the 12th day of May, 1880, in the city of San Francisco, that a short time before the 7th day of May, 1880, he became suddenly ill, and that at the time he became ill, and on the day last named, he had a general account with the defendant, the Hibernia Savings and Loan Society, evidenced by a pass book, showing a bal-

ance due him of $522.99.   The pass book was put in evidence.

The plaintiffs then called David Cornfoot, who testified that on Friday morning Fielding requested him to take charge of his effects, consisting of bank books, money, and assignment of mortgages and deeds and other papers, and requested him to hold them in trust for him until he got well, and if he (Fielding) should die, he requested him to transfer them to his daughter Emma for her use; that this was the condition he received them under on the 7th day of May; that he (witness) was to keep them in trust for him, and if he lived and got well, he was to return all his property to him; that if he (Fielding) died, he was to give it to his daughter; that he (Cornfoot) kept the bank book until his death, and the evening Fielding died he delivered it to his daughter Emma Daniel.   Fielding stated that he did not know whether he was going to live or die, and he wanted some one to look after him, to see that he would not want for anything, and to pay his bills, and to take general charge of him and his affairs while he lived.   That was his object in transferring his effects to me.   " The instructions to me [said Cornfoot] in regard to the bank book were to keep possession of it while he lived, and in case he should require any of that money for his sickness to draw it on his order, and pay it out as far as his sickness required it; and if he should die before any of the money should be used out of the bank book, I was to give it, as above stated, to his daughter, with instructions for her to draw the money, and to appropriate it to her own use."  None of the money was used from the bank, there being sufficient without it.

It was admitted that the bank book offered in evidence was the same book delivered to Cornfoot by Fielding on the 7th of May, 1880.   It was also admitted that the defendant Savings and Loan Society was at the time set forth in the complaint, and is, a corporation, and that defendant Smith was the duly appointed administrator of the deceased Abraham Fielding.

The plaintiffs proved that before the commencement of this action they were married, and that Emma Daniel had demanded of the society aforesaid the sum sued for, with the accruing dividends, and that no part thereof had been paid.   The plaint-

iffs rested, and the defendant Smith moved for a nonsuit on the following grounds:

"First. There is no evidence to prove that the plaintiffs, or either of them, were the owners of or entitled to receive $522.99 in gold coin of the United States, deposited with the defendant, the Hibernia Savings and Loan Society, in the name of A. Fielding.

"Second. There is no evidence of any delivery of the gold coin, or money, or bank book, symbolic or otherwise, by the said A. Fielding to said Emma Daniel; on the contrary, the evidence shows that he retained possession, control, and ownership for his own use; that the said Emma Daniel did not have, or claim to have, any interest, control, or possession of the bank book or money in bank until after the death of said Fielding, nor did any one hold possession thereof for her."

The court denied the motion, and Smith excepted. The cause was then submitted and the judgment rendered for plaintiffs. The defendant Smith moved for a new trial, and in his statement specified wherein the evidence was insufficient to sustain the decision of the court, which specifications presented substantially the same points as are set forth in the grounds for a nonsuit.

It is contended that the foregoing in view of death established a gift of the money in the savings and loan society mentioned above, by Fielding to Emma Daniel. Such is the question presented herein for decision.

To constitute a *donatio causa mortis,* the gift must be made in contemplation of the near approach of death by the donor, to take effect absolutely only upon the death of the donor. There must be a delivery of the property, either to the donee, or to some person for his use or benefit, and the donor must part with all dominion over the property, and the title must vest in the donee, subject to the right of the donor at any time during his life to revoke the gift. (*Dole* v. *Lincoln,* 31 Me. 428, 429; *Curry* v. *Powers,* 70 N. Y. 217; *Hatch* v. *Atkinson,* 56 Me. 327; *Taylor* v. *Henry,* 48 Md. 550.) All the authorities agree that there must be a delivery of the property intended to be the subject of the gift. (*Ham* v. *Moore's Admr.* 8 Ohio St. 242; *Fiero* v. *Fiero,* 5 Thomp. & C. 151; *Case* v. *Dennison,* 9 R. I. 88; *McGrath* v. *Reynolds,* 116 Mass. 566.)

Is there any evidence of such delivery here, and with intent by Fielding to part with all dominion over the money? The only evidence is that of Cornfoot. He does not state any manual tradition of the pass book to him. It does not appear that this pass book was at the place where the above stated conversation occurred between Fielding and Cornfoot. Nor is it stated that the book was locked in a trunk or drawer, and the keys delivered to Cornfoot that he might possess himself of the book. The statement of Cornfoot given above is that Fielding "requested me to take charge of his effects, consisting of bank books, money, and assignment of mortgages and deeds and other papers, and requested me to hold them in trust for him until he got well; and if he should die he requested me to transfer them to his daughter Emma for her use. That was the condition I received them under on the 7th of May. I was to keep them in trust for him, and if he lived and got well, I was to return all his property to him; and if he died, I was to give it to his daughter Emma."

We see nothing of delivery here. It may be remarked that it is afterwards stated that it was admitted that the bank book offered in evidence "was the same book delivered to said Cornfoot by said Fielding on the 7th of May, 1880," but in our judgment this language was only intended to indicate that the book offered in evidence was the same as the book which was afterwards taken possession of by Cornfoot, and by him handed over to Emma Daniel; that the word "*delivered*" used in stating the admission, was not used as indicating an actual tradition of the book on the 7th of May, when the conversation took place, but to identify the book as the one which came into possession of Cornfoot under the authority given him to take charge of it and hold it in trust for Fielding, and which was afterwards handed over by Cornfoot to Emma Daniel.

To show how strict is the requirement of delivery to constitute a gift *causa mortis* we refer to the case of *Case* v. *Dennison*, 9 R. I. 88. In this case, a gift *causa mortis* was claimed of a sum of money deposited in a savings bank in Providence. The bank book was not in the possession of the alleged donor, a married woman, but was in the possession of another person in Providence. The donor aforesaid died at Mystic, Conn. Shortly

before her death, she told her son that she had not long to live, spoke of the bank book being in possession of her son-in-law, and that she wanted him (her son) to get it, settle the bills, and if anything was left to divide it among her three children. After her death her son (one of the defendants in the case cited), obtained possession of the book, but the bank refused to pay him the money deposited, without a bond.

This was held not to be a donation *causa mortis* for want of delivery. The court, by Durkee, J., observed as follows as to the matter: "We think the defendant is not entitled to either the bank book, or the money which it represents as a gift *mortis causa*. There was no delivery." The court said further: "It is urged that the book was in possession of Mrs. Lawton, who it is claimed was a donee, and that it was not where the intestate could get it to deliver, and that upon these grounds the gift should be sustained. But we think a delivery should not be dispensed with on such grounds." (See also on this point the cases above cited of *Fiero* v. *Fiero* and *McGrath* v. *Reynolds, supra.*) It has been held that there must be delivery, even where the subject of the gift is in possession of the donee when the gift is made. (*Cutting* v. *Gilman,* 41 N. H. 147; *Huntington* v. *Gilmore,* 14 Barb. 243; *Shower* v. *Pilck,* 4 Ex. 478.)

In view of the strict requirements of the law as to delivery, as shown by the foregoing, we cannot hold that a delivery was established in this case. Nor does it appear that the dominion or control over the bank book or the money in the loan society ever passed from Fielding, or that any interest ever vested in the alleged donee. There was no language of gift used. On the contrary, the testimony indicates, in our judgment, the creation by Fielding of a bailment in trust or agency which was to terminate with the death of Fielding.

In our judgment the evidence was insufficient to establish a gift *causa mortis,* and the court erred in refusing to grant the motion for a nonsuit, and in its decision in favor of the plaintiff. The judgment and order must therefore be reversed, and the cause remanded for a new trial, and it is so ordered.

McKINSTRY, J., ROSS, J., SHARPSTEIN, J., and McKEE, J., concurred.

Petition for rehearing denied.