## TRENHOLM v. MORGAN.

1. *It would seem* that where a bond is intended to be disposed of as a *donatio causa mortis*, but no assignment is made, the legal title remains in the executor, and the rights of the donee can be enforced only by an action in equity; and in equity cases a jury trial cannot be demanded as of right.

2. Where a person, entitled to specific personal property in the hands of an executor which the executor treats as a part of the estate submitted to the court for settlement, answers the complaint and agrees to an order referring it to the master "to inquire and report upon all the issues of law and fact involved in the pleadings," he thereby waives any right that he may have previously had to a trial by jury of his title to such property.

3. A *donatio causa mortis* defined, and the character of the evidence necessary to establish it stated.

4. A lady on her death-bed handed to her daughter a written unsigned memorandum expressing her wishes as to the disposition of certain bonds and other personalty to M., saying, "That is my will—that is what I want done '; and again, pointing to a drawer, "There are the papers—I want you to take charge of them," and this daughter, afterwards, but in her mother's life-time, did possess herself of a box in this drawer containing the bonds referred to in the memorandum. This memorandum declared that the interest on these bonds was to be held for M. "to do as she pleases, but not the principal—that is to be held intact." *Held*, that neither the property mentioned in the memorandum nor the bonds in the box could be sustained as a *donatio causa mortis* to M.

Before FRASER, J., Charleston, July, 1887.

The opinion states the case. The Circuit decree was as follows:

This case came before me at the term of the court held in July, 1887, on a report of the master, dated May 24, 1887, and exceptions thereto, and also on a motion on notice to refer to a jury for trial an issue of facts as to the title of the defendant, Emily St. P. Morgan, to certain property as a gift to her as a *donatio causa mortis* by the testatrix, Mrs. Trenholm.

I will state my conclusions very briefly. The Court of Chancery has jurisdiction, at least concurrent with the court of law, to adjudicate questions of title arising from these transactions

called *donatio causa mortis*. If this defendant has any good title to this property, she could perhaps have asserted it by an action of claim and delivery in the usual way, and would have a right in such an action to a trial by jury. In this case, however, which is an action in chancery for the settlement of an estate, she has set up a claim to this property, and seeks its specific delivery. In the absence of any doubts as to the facts, I see no reason why this case should be sent to a jury, and I do not think there is any absolute right to such a trial. The jurisdiction in equity is peculiarly appropriate where the subject of the alleged gift is a chose in action which has never been assigned, and where the legal title remains in the executor, subject, it might be, to an equity in favor of the alleged donee. See *Story Eq. Jur.*, §§ 606, 607.

I am satisfied with the facts as found by the master. In many respects it is like the case of *Rees* v. *Rees* (11 *Rich. Eq.*, 86), which, in some respects, was a stronger case than this, and in which the alleged donee took no title to the property except a bond on himself, which had been given up and destroyed in the life time of the intestate. The written memorandum in the case before the court, to my mind, is clearly directory of something *to be done* at a future time. The bond is *to go to* the alleged donee. It conveys no present title. There is no delivery, actual or symbolical; no direction to deliver, and no assignment. I concur with the master in his conclusions of law and facts.

It is therefore ordered, that the motion for a jury trial be refused.

It is also ordered, that the exceptions to the report be overruled, and that the same be confirmed.

It is further ordered, that the case be recommitted to the master, to proceed as he has been further directed under the previous orders of reference in this case.

*Messrs. Mitchell & Smith*, for appellant.

Appellant was entitled to a trial by jury on the question of her title to the property donated. *Code*, § 274 ; *Story Eq. Jur.*, § 606 ; *Smith Eq.*, § 219. She has not lost that right. *Code*, § 288 ; 25 *S. C.*, 80. If the issue was not in the first instance

a legal one, still it was one of those issues that the exercise of a sound discretion, amounting to a legal right, required the chancellor to refer to a jury. 1 *Wms. Ex'rs*, 783 ; 3 *Strob. Eq.*, 34. There was in this case a valid *donatio causa mortis.* 2 *Ves., sr.*, 440 ; 1 *Dev.*, 401 ; 54 *N. H.*, 24 ; 1 *Nott & McC.*, 237 ; *Smith Eq.*, 117 ; 2 *Kent*, 444 ; 13 *S. C.*, 163 ; 1 *Paige*, 316 ; 2 *Sandf. Ch.*, 400 ; 13 *Reporter*, 788 ; 12 *S. C.*, 422 ; and especially *Pierce* v. *Boston Savings Bank*, 129 *Mass.*, 425.

*Messrs. G. M. Trenholm, Inglesby & Miller*, and *Rutledge & Rutledge*, contra.

March 21, 1888.　The opinion of the court was delivered by

MR. JUSTICE MCGOWAN.　Mrs. Anna Helen Trenholm, then possessed of a handsome estate, on October 13, 1877, executed her last will and testament, by which she made generous provision for all her children and grandchildren ; and after making several specific bequests, with special reference to equalizing their shares, she directed that the rest and residue of her estate "should be divided equally amongst the said Emma Josephine Walker, Celestine R. McCollough, Eliza T. McBeth, Kate Louise Trenholm, Alfred Glover Trenholm, Emily St. Pierre Morgan, and Francis H. Trenholm, and Emily St. Pierre Hazzard, the wife of William Miles Hazzard," &c.　William L. Trenholm, a son of the testatrix, qualified as executor, but he found that the estate had been so much reduced by misfortune and the results of the war, that difficult questions arose as to the rights of the different parties, and he was unable properly to administer the estate without the direction of the court, and he therefore instituted this proceeding, making all the legatees parties, offering to account as executor, and for leave to bring into court the estate (all personalty) to be administered for the benefit of such of the defendants as shall appear to be entitled thereto.

One of the paragraphs of the complaint stated "that the defendant, Emily St. Pierre Morgan, who is an infant aged nineteen years, has notified this plaintiff that she claims as a gift, in the nature of *donatio causa mortis* from the said testatrix, a certain bond of William M. Hazzard, dated June 16, 1879, and condi-

tioned to pay the sum of $4,000, secured by a mortgage of a certain plantation in the County of Georgetown, and known as 'Lopeland Rice Plantation,' which bond is now in the possession of the plaintiff as executor; but this plaintiff is informed and believes, and so alleges, that such gift, if any intended, was not made in accordance with the requirements of the law, and that said bond and mortgage is now a portion of the estate of the said Anna Helen Trenholm, to be used in satisfaction of the legacies," &c.

The parties answered, but it will not be necessary now to refer to any of them, except that of Emily St. P. Morgan, who, being an infant, answered by her guardian *ad litem*, Francis W. Dawson. She claimed that Mrs. Trenholm, shortly before her death, "did make a gift absolute, in the nature of *donatio causa mortis*, of the bond of William M. Hazzard, secured by the mortgage referred to and set out in said article. And defendant alleges that said gift was absolute and complete, and in all respects according to law, and said bond and mortgage are the sole property of this defendant, and form no part of the assets of the estate of said Anna Helen Trenholm. Wherefore this defendant prays that she be adjudged entitled to the said bond and mortgage of the said William M. Hazzard as her sole and separate property, and that plaintiff be further adjudged to account for and pay to this defendant such portion of the estate as this defendant may be entitled to," &c.

Judge Kershaw passed an order directing the executor to turn over to the master the property and evidences of indebtedness belonging to the estate, and "that it be referred to G. H. Sass, Esq., one of the masters of this court, to inquire and report upon all the issues of law and fact involved in the pleadings in this action, with leave to report any special matter," &c. This order was assented to in writing by Messrs. Mitchell & Smith, attorneys for the defendant, Emily St. Pierre Morgan. Accordingly master Sass held various references upon the question of *donatio causa mortis*, the attorneys of Miss Morgan being present and offering testimony; and when the evidence was all in he appointed a day for argument upon that question, when the attorneys for Miss Morgan claimed that upon the question of *donatio*

*causa mortis* she was entitled to a trial by jury, it being a claim "for specific personal property" donated to her by Mrs. Trenholm by gift in the nature of a *donatio causa mortis*, and protested against the master proceeding further at this time with the hearing of the issue.   The master ruled that the cause had been referred to him, with the consent of the attorneys, and it was his duty to proceed.   Messrs. Mitchell & Smith excepted, but submitted their argument under protest.

The master made a full and clear report, finding the facts as follows :   "At the time of Mrs. Trenholm's death she was staying at Asheville, N. C., with her daughter, Mrs. Emily St. P. Hazzard.   She had been with her about a month before her death.   She was sick when she came to Mrs. Hazzard's, and for ten days before her death was confined to bed.   Two days before she died, Mrs. Trenholm, knowing that she was dying, said to Mrs. Hazzard: 'You have not yet taken my will I told you about.'   Mrs. Hazzard then, in her mother's presence, and by her direction, opened a drawer alongside of Mrs. Trenholm's bed, and took from it a memorandum book, and from the pocket of the book a paper, which is in evidence, and is in these words: 'I wish the bond that Miles Hazzard holds to go to E. St. P. Morgan, also Huger Bacot's, and the $1,950 paid on the bond. The interest to be held for her to do as she pleases, but not the principal, that is to be held intact.   The silver marked for her. The press and book-case in my room at Legare's.   My chamber furniture to Helen Macbeth, viz., bedstead press, bureau, washstand, and bedstead.   My silver chest for Emily Hazzard.   The cedar chest in the garret at Legare's is for E. St. P. Morgan, with its contents.   The round table in the third story goes with my desk.   The silver cup and saucer that Mr. Trenholm gave me for my birthday I give to Rev. Dr. Porter as a mark of affection.   I wish my small sugar dish and M. pot, also, say three small waiters and candelabra, with branches, that Mr. T. brought for me from England.   A dozen coffee spoons.'

"The paper ends thus abruptly.   It is in Mrs. Trenholm's handwriting, but is not signed.   Mrs. Hazzard took the paper from the book, and Mrs. Trenholm said : 'That is my will—that is what I want done.'   Then she pointed to another drawer and

said : 'There are the papers. I want you to take charge of them.' Mrs. Hazzard took the papers, not immediately, but a little later, and while her mother was still alive and conscious. On the night of her mother's death she opened the box in the presence of Mrs. Edward Trenholm and Captain Hazzard. The box contained the Hazzard and Bacot bonds, and several other papers, but Mrs. Hazzard is not sure whether the mortgage securing the Hazzard bond was in the box. She kept these papers in her possession for some time, and then, at the request of W. L. Trenholm, the executor of the will, she sent the papers to him, not thereby intending to waive any of Miss Morgan's rights to their possession—supposing that that would not be questioned.

"At the time when Mrs. Trenholm said to Mrs. Hazzard, 'That is my will,' &c., Mrs. Hazzard had not read the paper called the 'will,' nor had her mother spoken to her previously of any intention of giving the bond to Miss Morgan, and no impression was produced upon Mrs. Hazzard's mind of any kind, except that her mother was leaving her her wishes to carry out. Mrs. Trenholm seemed perfectly satisfied after she had delivered the papers to Mrs. Hazzard. As Mrs. Hazzard expresses it : 'She produced the impression on me that she had given me the paper she called her 'will,' and the other papers, and that I would see it done, and she seemed satisfied with that.' It may be added that Miss Morgan was the grandchild of Mrs. Trenholm, and 'had been given to her when she was ten days old, and had always lived with her,' being entirely supported and brought up by Mrs. Trenholm. At the time of Mrs. Trenholm's death Miss Morgan was not quite eighteen years old," &c.

Upon this state of facts, the master held, as matter of law, that the claim was not sustained as creating a *donatio causa mortis*. Upon exceptions to the report, the question came up before Judge Fraser, who confirmed the master's report, both in respect to the motion for a jury trial and on the merits. From this decree F. W. Dawson, guardian *ad litem* of Emily St. Pierre Morgan, appeals to this court upon the following grounds :

"1. That his honor should have adjudged that the order of reference herein was not to hear and decide, but only to examine and report upon the issues, that under such order it was incum-

18

bent upon the parties to offer sufficient testimony for the master to examine and report what were the issues in the cause, and that consent to such an order of reference was not a waiver of any right to a trial by jury.

"2. That his honor should have adjudged that the claim of the defendant, Emily St. P. Morgan, herein, to a *donatio causa mortis* was, in effect, a claim to certain specific personal property, and that the issue as to her right to such specific personal property was an issue at law, triable by a jury only, and that no waiver of a right to a trial by jury on such issue had been made.

"3. That his honor should have adjudged that there was no intention herein to waive any trial by jury, nor any waiver of the same on the part of the defendant, Emily St. P. Morgan, and that upon the demand for a jury trial, made on behalf of the said Emily, the master should simply have reported the issue to the court for the proper determination of all issues of fact by the court and jury.

"4. That his honor should have adjudged that the issue presented by the claim made by the said Emily was an issue that, arising even in a chancery case, should be tried by a jury, and that his honor erred in not framing a proper issue thereon, and referring the same to a jury.

"5. That his honor should have adjudged, as a conclusion of fact, that the late Anna Helen Trenholm, being in her last illness, and conscious of impending death, made a declaration in writing of certain gifts, to become absolute in the event of her impending death, and delivered the objects of her donation to her daughter, Mrs. Hazzard, on behalf of her donees, together with her written declaration of gift concerning the same.

"6. That his honor should have adjudged, as a conclusion of fact, that there was an absolute delivery and parting with the dominion of the objects of her donation by Mrs. Trenholm to Mrs. Hazzard, a third person, who received and took charge of the same on behalf of the donees, and the possession or dominion of the same was never restored to the donor, nor was reversed by her.

"7. That his honor should have adjudged, as a conclusion of fact, that there was a clearly expressed intention on the part of

Mrs. Trenholm to give and donate to the said Emily St. Pierre Morgan the specific personal property claimed by her, and that such express intention was followed by the actual transfer and delivery of the personal property given to a third person on behalf of, and for the benefit of, the donee.

"8. That his honor should have adjudged, as a conclusion of law, that the paper writing handed to Mrs. Hazzard was not intended as a will, but that the same was intended as a declaration of intention, in lieu of being spoken, and that the same was a good and valid declaration of a present intention to donate.

"9. That his honor should have adjudged, as a conclusion of law, that the delivery to Mrs. Hazzard of the articles donated, accompanied by the written declaration of intention to donate, constituted an actual transfer to Mrs. Hazzard, not as the agent of the donor, but as the trustee of the donee, and that there was a positive legal parting with the dominion of the articles given, and the transfer of the same to a third person, to hold on behalf, and in the interest, of the donee.

"10. That his honor should have adjudged, as a conclusion of law, that the parting with the dominion of the articles given, accompanied by a declaration of gift, and the names of the owners, was a good gift, taking effect *in presenti*, revocable upon the donor's recovering, and not a bequest to take effect *in futuro*, only upon the death of the testator.

"11. That his honor should have adjudged, as a conclusion of law, that the delivery of the written declaration to Mrs. Hazzard was a good expression of an intention to donate, although at the time Mrs. Hazzard was ignorant of its contents.

"12. That his honor should have adjudged, as a conclusion of law, that there was a good *donatio causa mortis* to Emily St. P. Morgan of the articles named in the paper writing and transferred in the box to Mrs. Hazzard, and erred in overruling the exceptions to the master's report."

The first four exceptions complain that the motion in behalf of Miss Morgan for a trial by jury as to her claim of a gift *causa mortis* from the testatrix, Mrs. Trenholm, was refused. As we understand it, sections 274 and 288 of the Code, taken together, provide (1) that cases in chancery must be heard by the court,

with the right to refer; (2) that an issue of fact in actions for the recovery of money only, or of specific real or personal property, must be tried by a jury, unless a jury trial be waived, either by failing to appear at the trial, by written consent, in person, or by attorney, filed with the clerk, by oral consent in open court, entered on the minutes, "or a reference be ordered."

If this is a chancery case, Miss Morgan never had the right to demand trial by jury. In that case she might ask an issue to be ordered by the judge—"an issue from chancery"—but if there was no conflicting testimony or other cause why he should desire the verdict of a jury to enlighten his conscience, he was not bound to grant it, and his refusal cannot be regarded as error of law, unless possibly in the case of abuse of discretion, which we do not see here.

This proceeding certainly was in chancery, and for purely equitable relief. Miss Morgan answered without objection, claimed "an account," and controverting the allegations of the complaint in that regard, made her claim to the Hazzard bond as a *donatio causa mortis*. Did that change the character of the proceeding *quoad* the alleged gift? Did it become an action at law for the recovery of specific personal property—the bond? The bond is a mere chose which was never assigned. The legal title is in the executor, and we incline to think that the extent of the appellant's right—granting all that is asked—was to have declared a trust, an equity in the bond, which could only be done by a proceeding in equity; and that there was no oversight on the part of the distinguished counsel in omitting at any time to demand a jury. See 1 *Story Eq.*, § 607; 3 *Pom. Eq.*, § 1151. But as, in the view the court takes, it is not necessary, we prefer to reserve our judgment on the point.

Assuming, however, that the appellant had the right to sue the executor at law for the recovery of the bond as "specific personal property," we think that the demand for a jury came too late. Section 292 of the Code provides that "all or any of the issues in the action, whether of fact or law, or both, may be referred upon the consent of the parties," &c.; and, as we have already seen, section 274 declares that the right to demand a jury may be waived, as provided in section 288, "or a reference be ordered."

In this case a reference, consented to by all the parties, was ordered, and the testimony taken under it without objection; and there can be no doubt about it, if the order passed by consent was "a reference" in the sense of the code. We have no doubt upon the subject. The order seems to have been drawn with intelligence and care. It provides, "On motion of George M. Trenholm, attorney for plaintiff, with the consent of the attorney for the said defendants herein, ordered that it be referred to G. H. Sass, Esq., one of the masters of this court, to inquire and report upon all the issues of law and fact involved in the pleadings in this action, with leave to report any special matter, &c. * * * It is further ordered that any party to the action shall have the right to contest any claim preferred by any creditor, * * * and that said master report the testimony relative to the claims so contested and his conclusions of law and fact with reference to said claims," &c. We cannot doubt that this was "a reference" in the sense of the code, and that consenting to it was a waiver of the right to demand a trial by jury, if, indeed, such right ever existed. See *The City Council* v. *Ryan*, 22 *S. C.*, 339; *Martin* v. *Martin*, 24 *Id.*, 446; *Sale* v. *Meggett*, 25 *Id.*, 72; *Calvert* v. *Nichols*, 26 *Id.*, 304.

That brings us to the main question in the case. All the other exceptions charge error of fact and of law on the part of the judge, in denying the claim of the appellant to the Hazzard bond as a *donatio causa mortis* from the testatrix, Mrs. Trenholm. The law allows the owner of property to declare in his life-time to whom his property shall go after his death; but in order to avoid contention this great privilege is carefully guarded. With inconsiderable exception, all such dispositions are required to be in writing and signed by the donor in the presence of three subscribing witnesses; and if these formalities are not observed, such attempted dispositions are void. The law also gives to the owner of property another right, and that is, to give it away—donate it; and if it is personal property, he may do so verbally, always provided the gift is completed by delivery of the article at the time of the gift—and, if so, the donation is irrevocable. But the law recognizes still another mode of giving title to personal property, which, from the circumstance that the right is only ac-

corded to one who is in anticipation of speedy death, is called a *donatio causa mortis*. Being half way between a testamentary gift and one by a person in health, it partakes somewhat of the nature of both : of a testamentary provision, in going into complete operation only after death, and that of an ordinary gift *inter vivos*, in that the delivery of the article at the time of the death is absolutely necessary. The right is exceptional, and although we cannot say that courts lean against gifts *causa mortis*, yet the evidence to establish them should be clear and unequivocal, and will be closely scrutinised. The burden of proof is on the donee.

From the nature of the *donatio*, it is apparent that the infallible test, which must distinguish it from a testamentary gift, is delivery, change of dominion *in presenti*. Without this there is really nothing to distinguish it from an ordinary testamentary bequest. "It is essential to the validity of a donation that the thing given be delivered to the donee or to his use. Without a delivery the transaction would only amount to a promise to give, which, being without consideration, would be a nullity. The intention to give must be accompanied by a delivery, and the delivery must be made with an intention to give. The practical question therefore is, what is a sufficient delivery? The delivery must be made directly to the donee, or to an agent or trustee on his behalf; but not to an agent for the donor. It may be actual, a manual possession of the article itself by the donee or his agent, or constructive. If constructive, it must be more than any mere words, and more than any mere symbolic act. A constructive delivery must be something which completely terminates the donor's custody and control of the article donated, and which places it wholly under the donee's power, and enables him without further act on the donor's part to reduce it to his own manual possession," &c. 3 *Pom. Eq.*, § 1149; *Gilmore* v. *Whitesides, Dudley Eq.*, 14.

There is in the case no conflict of testimony. There was but one witness, Mrs. Hazzard, whose touching statement of the facts was clear and manifestly frank and truthful. Mrs. Trenholm contemplated making a codicil to her will, and bequeathing certain articles to particular members of her family. This appears

from her having the imperfect memorandum of what she wished incorporated into a will, also from the character of the paper, indicating the articles intended for different persons, as well as from her own declarations, "That is my will, that is what I want done." The preparation of her will, begun but incomplete, was on her mind, and, when death was near at hand, seeing that there would not be time to carry out her purpose regularly, she attempted to do so verbally, by declaring her wishes to her daughter, Mrs. Hazzard, somewhat in the nature of a nuncupative will by one *in extremis*. Most of the persons as well as the articles intended for them respectively, were not present; and as to these articles there could have been no actual delivery, nor could the unsigned memorandum operate as a symbolical delivery, so as to transfer dominion to the parties. If so, we do not see why any one *in extremis* might not, in direct violation of the law as to wills, dispose of his whole personal property, by simply handing to some one at his bed-side a memorandum stating that he wished it divided among different persons not present as therein stated. It seems to us, that it was an ineffectual effort to supplement her will. Mrs. Hazzard says, "She produced the impression on me, that she had given me the paper which she called her 'will,' and the other papers, and that I would see it done, and she seemed satisfied with that." "If a person intends to make a testamentary gift, which, for any reason, is ineffectual, it cannot be supported as a *donatio causa mortis*." 3 *Pom. Eq.*, § 1147; *Gilmore* v. *Whitesides, Dudley Eq.*, 23.

But it is urged that there is not the same difficulty as to the contents of "the box," which Mrs. Trenholm had with her in Asheville, and, being about to die, placed in charge of Mrs. Hazzard. It must be kept in mind, that up to that time Mrs. Hazzard had no knowledge of what was in the box. Mrs. Trenholm made no allusion to the subject, but produced the memorandum and said, "That is my will, that is what I want done." Then she pointed to another drawer and said, "There are the papers, I want you to take charge of them." She said nothing about the Hazzard bond. On the night after her mother's death, Mrs. Hazzard opened the box and found in it the Hazzard bond, and also that of Bacot and several other papers. Only the Haz-

zard bond is claimed as a *donatio*. We do not see that it was, in any way, distinguished from that of Bacot, or, indeed, from the money paid on the latter. It is clear, there was no gift, unless in the terms of the memorandum, which contained the only reference to either: "I wish the bond that Miles Hazzard holds (owes) to go to E. St. P.' Morgan, also Huger Bacot's and the $1,950, paid on the bond. The interest to be held for her to do as she pleases, but not the principal, that is to be held intact," &c. We suppose the inhibition against the capital being paid to the appellant, referred to both bonds; and, if so, that itself would seem to indicate the idea of creating a settlement, rather than an absolute delivery. It seems to us that, when Mrs. Trenholm said to Mrs. Hazzard, "There are the papers, I wish you to take charge of them," she did not mean thereby to deliver them *in presenti* to or for the appellant; but, being conscious of her approaching end, she meant to entrust them to her daughter as her agent and friend.

We concur with the master and Circuit Judge that the claim of a *donatio causa mortis* was not sustained.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McIVER concurred.

MR. CHIEF JUSTICE SIMPSON. I think that the defendant, Emily St. Pierre Morgan, set up in her answer a legal claim to the bond and mortgage in question, which being denied, an issue at law was presented, subject to trial by a jury, originally. But this right was waived by the written consent of reference to the master, after which it was too late to demand a jury, especially after all the testimony had been taken by the master. I concur, therefore, in the judgment of the Circuit Court on this point, for the reason given above. I concur also in the judgment below as to the claim of *donatio causa mortis*.