## VAN FLEET *v.* McCARN.

(*Supreme Court, Special Term, Allegany County.* September, 1888.)

1. GIFTS—CAUSA MORTIS—APPREHENSION OF DEATH—EVIDENCE.

Evidence that at the time of making an alleged gift *causa mortis* the donor was old and infirm, and said that she feared she would not live through the next winter, and that the doctor had told her that she might die at any minute, it not being shown that she then had any disease except rheumatism, is insufficient to warrant an inference that the gift was made under apprehension of immediate death, or that death was caused by any disease which she then had, where it appears that her health afterwards became much better; that she died 14 months thereafter, of a sudden illness, which she was not shown to have had any reason to expect; and that shortly after the alleged gift she disposed of her property by will.

2. SAME—DELIVERY TO DONEE—BANK DEPOSIT SLIP.

The delivery by the depositor of a deposit slip issued to her by the bank, and which simply indicates the time and amount of the deposit, and is not signed, is not a sufficient delivery of the money represented thereby to constitute a valid gift *causa mortis*, the depositor retaining control of such money during her life, without reference to such deposit slip.[1]

On motion for new trial.

The plaintiff, Levi C. Van Fleet, as executor of the will of Sophronia Pettibone, deceased, brought an action against the First National Bank of Hornellsville to recover $500 deposited in that institution June 9, 1884, by Mrs. Pettibone. The defendant, Mrs. Lucinda McCarn, claiming this money under and

---

[1] See note at end of case.

by virtue of a gift *causa mortis*, an order was made, at the request of the bank, substituting her in its stead. Upon the trial defendant obtained a verdict. This is a motion by the plaintiff for a new trial upon the case and exceptions. At the time of the deposit, the cashier gave Mrs. Pettibone a memorandum thereof in the following words and figures: "Deposited in the First National Bank of Hornellsville, by Sophronia Pettibone, June 9, 1884, $500." This memorandum was not signed by any one. Mrs. Pettibone thereafter delivered a box containing this deposit slip and other securities to one Mrs. Updyke, with instructions to give it to defendant after her (Mrs. Pettibone's) death, which was done.

*L. C. Van Fleet*, (*Rufus Scott*, of counsel,) *pro se*. *C. A. Dolson*, (*James H. Stevens*, of counsel,) for defendant.

Lewis, J. I was impressed upon the trial of this action that the defendant had failed to make out a defense, and that the plaintiff was entitled to a verdict for the amount of the money in controversy; and a further examination which I have given this case has confirmed my first impressions. The plaintiff, as executor, was entitled to the money, unless the defendant established a donation of it to her *causa mortis*. The statute, for very apparent reasons, requires great formality in a will disposing of property. The law, however, permits the disposal of property *causa mortis*, but does not favor such disposition of property, and requires one claiming property under such a gift to establish it by the clearest, strongest, and most unequivocal evidence. *Grey* v. *Grey*, 47 N. Y. 556; *Kenney* v. *Public Ad'mr*, 2 Bradf. Sur. 320, 321; *Delmotte* v. *Taylor*, 1 Redf. Sur. 423; *Champney* v. *Blanchard*, 39 N. Y. 116. The ease with which frauds may be perpetrated in such cases has led to the adoption of this rule. Mrs. Pettibone, at the time of the alleged gift, was old and infirm; but it is not made to appear that she apprehended that death was near at hand. She said, along in the summer of 1885, and about the time it is claimed this gift was made, that she feared she would not live through the next winter; that the doctor had told her that she might die at any minute; but, after the making of these declarations her health was much better, so that she was able to leave her home in Allegany county, and visit the Chautauqua assembly at Chautauqua. She did not die until the 10th day of September, 1886, some 14 months after the making of the alleged gift. She had ample time and opportunity, and was fully competent thereafter, to dispose of her property by a formal will, as she in fact did do, a short time thereafter. The defendant failed to show a gift under apprehension of immediate death, or expectation that death was near at hand, and failed to bring her case within the rule laid down in *Daniel* v. *Smith*, 64 Cal. 349, and *Gourley* v. *Linsenbigler*, 51 Pa. St. 345. It was incumbent upon the defendant to show that Mrs. Pettibone died of the disease with which she was afflicted at the time of her gift. *Grymes* v. *Hone*, 49 N. Y. 17. She was not shown to have had at that time any disease except rheumatism, which is a common ailment with persons of her advanced age. The infirmities of old age seem to have been her main trouble, and the cause of her apprehension of her death. A sudden and acute attack of trouble in her stomach or side was in fact what caused her death. She had been for some time immediately before her death visiting at the defendant's home; had concluded her visit; was fully dressed, prepared to return to her home, and was suddenly and violently attacked with her mortal sickness, without, so far as the case shows, any premonition or reason to expect such sickness. She died quite suddenly. The evidence did not warrant the inference that her death was caused by any disease that she had at the time of the alleged gift.

To sustain a gift *causa mortis*, there must be such a delivery of the article donated as vests in the donee control and dominion over the property. *Harris* v. *Clark*, 3 N. Y. 93. And this brings us to another fatal defect in the

defendant's case. I assume that the deposit slip was in the box at the time it was first delivered to Mrs. Updyke, and remained in it until after the death of Mrs. Pettibone; and, as we have seen, it came into the hands of the defendant after the death of Mrs. Pettibone. But the possession of this deposit slip was of no avail to the defendant. Had she presented it to the bank where the money was on deposit, it would not in any respect have aided her in obtaining the money. It was simply a memorandum, not signed by any one, not binding any one, and was not even evidence of the fact that the bank had the money. The money was in the bank, subject only to be drawn out upon Mrs. Pettibone's check before she died. The bank had not made the return of the deposit slip a condition precedent to the payment of the money. It did not require it to be returned to the bank. It took no account of it. It was simply a memorandum which would inform Mrs. Pettibone of the time and amount of money she had deposited in the bank. It was not evidence of any obligation on the part of the bank to Mrs. Pettibone. Had the defendant obtained possession of the deposit slip during the life of Mrs. Pettibone, the bank would have paid the money upon the presentation of Mrs. Pettibone's check. Mrs. Pettibone continued through her life to have full and complete control over the money, without reference to the deposit slip. How, then, can it be said that the defendant ever obtained control or possession of the money in controversy? And that, under the authorities, is an essential element of a gift *causa mortis;* as much so as in case of a gift *inter vivos*. It is important that this wholesome rule should not be relaxed. A mere symbolical delivery will not answer. The donee must either have possession of the article donated or the means of obtaining it. *Curry* v. *Powers*, 70 N. Y. 212. In *Basket* v. *Hassell*, 107 U. S. 614, 2 Sup. Ct. Rep. 415, MATTHEWS, J., laid down the rule governing the delivery of choses in action as follows: "The point which is made clear by this review of the decisions upon the subject as to the nature and effect of the delivery of a chose in action is, as we think, that the instrument or document must be the evidence of a subsisting obligation, and be delivered to the donee, so as to vest him with the equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, absolutely and irrevocably in case of gifts *inter vivos*, but upon the recognized conditions subsequent in case of gifts *causa mortis;* and that a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation according to its terms will not suffice." In the case of *Bank* v. *Clark*, 5 N. Y. St. Rep. 262, the court held that a certificate of deposit, signed by the cashier of the bank, *prima facie* represented an undertaking on the part of the defendant to pay the sum mentioned in it to the depositor on demand. The instrument not containing any absolute agreement to pay on the part of the bank, the court held that the law supplied by implication such undertaking. But the deposit slip in this case lacks the essential element of the cashier's signature. Cases holding that the delivery of a savings bank pass-book passes the possession of the fund are not authority for the defendant in this case. The rules of these savings banks require the presentation of these books upon the payment of the money, and authorize the bank to make payment to any one presenting the book. The defendant, I think, failed to establish any defense to this action. The plaintiff was entitled to a verdict, and a new trial must be granted, with costs to abide the result of the case.

### NOTE.

GIFTS—CAUSA MORTIS—DELIVERY. To constitute a valid gift *causa mortis*, there must be not only an actual and complete delivery, so as to deprive the donor of all further control or dominion over the property, but the donee must take and retain possession until the donor's death. Dunbar v. Dunbar, (Me.) 13 Atl. Rep. 578. The delivery must be as complete as the nature of the property will admit of. Gano v. Fisk, (Ohio,) 3 N. E. Rep. 532, and note; Lamson v. Monroe, (Me.) 5 Atl. Rep. 313. It must be such

as in the case of a gift *inter vivos* would invest the donee with title. Shackelford v. Brown, (Mo.) 1 S. W. Rep. 390. And delivery to an agent, with instructions to deliver to the donee in case of the donor's death, otherwise to return to the latter, is insufficient. Id. But delivery to a third person, for the donee's use, is effectual. Emery v. Clough, (N. H.) 4 Atl. Rep. 796. See, also, note, Id. The intention of the donor must be established by clear and precise evidence. Appeal of Madeira, (Pa.) Id. 908; Lamson v. Monroe, *supra*. For evidence held sufficient, see Vandor v. Roach, (Cal.) 15 Pac. Rep. 354.

A delivery to a third person, to be given to the donee on condition that he does not contest the donor's will, is sufficient. Woodburn v. Woodburn, (Ill.) 14 N. E. Rep. 58. A certificate of deposit may be the subject of a gift *causa mortis*, though payable to the donor, and not indorsed by her. Conner v. Root, (Colo.) 17 Pac. Rep. 773. But delivery of his bank-book to a third person by the donor, with a request that it be kept for a designated donee, and delivered to her on the donor's death, the latter not parting with the control of the book, is not a valid gift *causa mortis*. Daniel v. Smith, (Cal.) Id. 683; Appeal of Walsh, (Pa.) 15 Atl. Rep. 470. Nor is delivery of a memorandum disposing of certain personal property, neither the donees nor the articles mentioned being present. Trenholm v. Morgan, (S. C.) 5 S. E. Rep. 721. Gifts *causa mortis* are defined in Henschel v. Maurer, (Wis.) 34 N. W. Rep. 926; Parcher v. Savings Bank, (Me.) 7 Atl. Rep. 266.