## KNIGHT v. TRIPP.*

### S. F. No. 735; August 9, 1897.

#### 49 Pac. 838.

Gift.—A Person About to Undergo a Surgical Operation, the result of which was uncertain, transferred all her property to defendant, the real estate being conveyed by deed in due form, and the personal property, consisting of furniture, notes, clothing, etc., being transferred by a bill of sale, but no physical change in possession taking place. The intention was that the property should be used for the donor's benefit, and remain in her possession during her life, and, in the event of her death from the operation, defendant was to distribute it according to the directions of an unsigned

*For subsequent opinion in bank, see 121 Cal. 674, 54 Pac. 267.

written memorandum. Held, the donor having retained possession, and the right to expend as much of the personalty as she might need during her life, that the transaction was void as a gift.[1]

    Gift.—An Administrator Seeking to Recover Personal Property of deceased, held by a transferee under color of title by gift, need not make a demand therefor before instituting suit.

APPEAL from Superior Court, Alameda County; F. B. Ogden, Judge.

Action by W. H. Knight, administrator, against W. G. Tripp. After judgment for plaintiff, a new trial was granted and plaintiff appeals. Reversed.

F. E. Whitney and Reed & Nusbaumer for appellant; Welles Whittemore and Carey Howard for respondent.

TEMPLE, J.—This is an action brought by the administrator of E. L. Cook, deceased, to recover personal property alleged to be the property of the estate, and which, it is charged, is wrongfully withheld by defendant. The answer denies that the property belongs to the estate, or that it belonged to the deceased at the time of her death, or that plaintiff is entitled to the possession thereof. From the evidence it appears that the property belonged to the deceased on the thirty-first of May, 1895, and that on that and the following day certain transactions were had which defendant claims constituted a gift of said property to him, partly for his own use and partly in trust for others. Whether such was the effect of what was done is the question to be determined on this appeal. The findings and judgment were for the plaintiff, but subsequently a new trial was granted, and the plaintiff appeals from this order, claiming that the order cannot be sustained on any ground whatever.

It appears that Mrs. Cook had been a widow for about six years; that she was childless, and had an estate worth about $25,000, of which about $10,000 was personal property; and that she lived in her own house in Oakland, alone, except

---

[1] Cited and approved in Harty v. Teagan, 150 Mich. 77, 113 N. W. 595, where the defendant was alleged to have money, taken by him dishonestly and by force from the decedent, who was mentally incapacitated at the time. It was said such a claim did not need the interposition of equity.

Cited in the note in 99 Am. St. Rep. 895, on gifts causa mortis.

that she had some lodgers, to whom she rented rooms in her house. She died June 14, 1895, having been sick for some months. On the 29th of May, 1895, defendant called upon her at her request. She told him she was about to undergo a surgical operation, and was somewhat uncertain as to the result, and desired to see him about her business. He promised to call on the next day, and did so. She then told him that she did not like the will she had made, and had destroyed it, and wished to dispose of her property while living, and said, "I want to give all of it to you, or place all of it in your hands, and tell you those whom I want should have it." At the suggestion of defendant she sent for a lawyer, and on that day and the next her entire estate, both real and personal, was formally transferred to the defendant. The transfers were in writing, and in form were sales. The real estate was conveyed by deed which was then and there delivered; the furniture by a bill of sale, which recited a consideration of one dollar, and "other considerations to me moving, I do hereby sell and assign, transfer and deliver all my household furniture and wearing apparel, and all other personal property held or owned by me, in that certain house," etc. No delivery of the furniture was made, but the donor continued to occupy the house, and use all that she had any use for, as before. She had some promissory notes and corporate stock in a tin box which she kept in her desk. The desk was brought, the notes and stock indorsed, and by the defendant were replaced in the box and locked, the defendant retaining the key. The box was then replaced in the desk, which was also locked, the defendant retaining that key also. The desk remained in the house with the other furniture. She had some $8,000 deposited in three different banks in Oakland. Mr. Tripp testified that she assigned the books and the money to him by written assignments on the books. The books were not produced, and we are not informed further as to what the written assignments contained. Mr. Tripp further testified: "I made a memorandum at the time of the disposition of the property. . . . . It was made in the course of the conversation between Mrs. Cook and myself with regard to the disposition of the property. The deeds to the real estate, the bill of sale, and assignments of mortgages were not made until

47

the first day of June—the next morning." The memorandum read as follows: "Instructions of Mrs. E. L. Cook as to the disposal of her property in the event of her death. W. G. Tripp is to have the house and lot and contents of the house at 680 Tenth street, and all other real estate, and is to pay all debts and funeral expenses, for permanent care of the cemetery lot, and such monuments as he may choose for herself and husband; to pay A. E. Jenner of Belvedere $2,000; Fred B. Kimball, Webster City, Iowa, $1,000; Fred W. Cook, New York, $1,000; C. F. Nicklaus, Oakland, Cal., $2,000; Mrs. Fannie Hilton, Oakland, $500; Miss Grace Hilton, $500; Miss Carrie Hilton, $500; Mrs. Pierce, Oakland, $1,000; Miss Maggie Gates, Oakland, $200. Any property remaining after these instructions are carried out is to belong to W. G. Tripp. June 8, 1895. Trunk and contents in closet under the back stairs is to be delivered to Mrs. Hilton." The defendant contends that the transfer to him was absolute, in fact a gift inter vivos, and was not revocable by the donor, nor defeasible by her survival. He has not delivered any of the things to the ultimate donees, but he contends that he was authorized to do so at once, and in fact that whether he did or not was not material to the complete execution of the donation. The plaintiff denies that there was any executed gift either inter vivos or causa mortis, but contends that the whole transaction was testamentary in character; that the property was placed in the hands of the defendant to hold for the donor, and in case of her death was to be delivered to the donees named; that the defendant held it as agent of the donor, and the agency was revoked by the death of the principal. He also contends that there was no sufficient delivery for the vesting of the property in the donees, either as a gift mortis causa or inter vivos.

Section 1147 of the Civil Code reads as follows: "A verbal gift is not valid unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery of the thing to the donee." By verbal gift is meant an oral gift—one which cannot be proven by any writing. Many different transfers are shown in this case, but all purport to be sales, or they are blank indorsements. Not one of them evidences a gift. That must be proven by oral evidence. The memorandum, though made in the presence of the al-

leged donor, was signed by no one. The means of getting possession and control must have been given; and, since the things were all capable of delivery, and there is no pretense of a symbolical delivery, it must appear that there was at the time an actual delivery of the gifts to the donees. I think it plain that the gift was not to vest absolutely except in the event of her death from the operation. She transferred all she had, but, though she knew she was in peril, she did not feel sure that her disease was mortal. She hoped to survive, but thought the issue uncertain. Had she survived, she would have been without the means of support, and, even though she had implicit confidence in the defendant, and may have felt sure that he would give her the use of the property, nearly all her money would have been parceled out to several donees. And then it appears that the defendant assured her that the transfers could easily be canceled, and says he would have returned everything to her had she recovered and requested it, and such was his intention. This is a complete surrender of his contention, for he could not return the property in case of her survival if the gifts were absolute, but would have been compelled to deliver them to the ultimate donees, whose bailee he was. And then the instructions taken down by him at her dictation provide for a disposition of her property only in the event of her death. The memorandum has every resemblance to a will except its execution. It provides for a disposition of all the property of Mrs. Cook in the event of her death. It directs the payment of her debts and funeral expenses. It contains a devise of her real estate, many legacies, and names a residuary legatee. Evidently Mrs. Cook expected to remain in the house and have the use of the furniture so long as she might live. This is not provided for in the instructions, and, if the disposition was to take effect only at her death, it was not necessary. Of course, she was to have medical aid and nursing. She had several doctors and a nurse engaged. And she directed the defendant to furnish the nurse all the money the nurse should call for. She could not know how long she might need such attention, nor what it would cost. The personal property was of the value of $10,802.10, as the defendant testified. The cash legacies were $8,700. The defendant has paid out $1,800 under the instructions, and has paid none of the cash legacies or gifts. He is to erect monu-

ments to her and her husband, and to provide for the permanent care of the cemetery lot. All the real estate and the furniture was given to the defendant. It must have seemed quite possible, when these transactions were had, that the necessities of Mrs. Cook might be. so great that all these legacies could not be paid. Suppose her necessities had been such that all the personal property had been required. Certainly, the defendant would have felt that she was entitled to it according to her understanding of the terms of her gift. Undoubtedly, a delivery may be made to a third person for an intended donee, but the delivery and the conditions must be such that such person will at once become the bailee of the donee. The gift will still be revocable, but the possession and present control and lawful dominion must pass from the donor to the donee. The gift may even be conditional, but one of those conditions must not be that the donor shall retain possession and the right to expend as much of it as he may require or choose to expend during life. Such a disposition is testamentary, and, unless made in accordance with the statute of wills, is void; and such, I think, was the disposition made in this case. See, on this subject, Basket v. Hassell, 107 U. S. 602, 27 L. Ed. 500, 2 Sup. Ct. Rep. 415; Daniel v. Smith, 64 Cal. 346, 30 Pac. 575.

There is no injurious error in any of the rulings at the trial against the defendant. In most cases the rulings were plainly correct, and those that may be questioned were of no consequence. There was no necessity for a demand before bringing the suit. The defendant held the goods under a claim of title, and his intention to retain them as his own was clearly manifest, and in his answer he asserts his title and denies the right of the plaintiff. The answer itself shows that the possession of the defendant was adverse. The order granting a new trial is reversed.

We concur: McFarland, J.; Henshaw, J.