[Sac. No. 448. Department One.—July 14, 1898.]

AMOS HART, Administrator, etc., Respondent, v. PLATT KETCHUM, Appellant.

GIFT CAUSA MORTIS — DEPOSIT IN SAVINGS BANK—AGENCY.—In order that money deposited in a savings bank may be the subject of a gift *causa mortis*, the delivery to the donee of the means of obtaining the money must be as a gift *in presenti*, conferring upon the donee a present title and property in the thing given, and not for the purpose of making a future disposal of it under the directions of the donor. If the donee is merely empowered to draw the money, and is thereafter to dispose of it in accordance with instructions from the donor, he is only an agent of the donor, and his agency terminates with the death of the latter.

ID.—TITLE REMAINING IN DONOR.—Unless the property in the thing given vests in the donee, it remains in the donor; and a mere purpose on his part to make a future gift is incapable of enforcement. It is the delivery by the donor with intent at that time to vest title, and not the possession by the donee, that makes the gift effective.

ID.—ABSOLUTE GIFT—CONDITION—TESTAMENTARY DISPOSAL—ESTATE OF DE-
CEASED DONOR.—The law requires a gift *causa mortis* to be absolute at
the time it is given, but adds to it the condition that it may be re-
voked at the will of the donor, and that it is revoked by his re-
covery; but if by the terms of the gift it is not to take effect until
after the death of the donor, the disposal is testamentary and not
a gift, and the thing given is a portion of the estate of the deceased
donor at the time of his death.

ID.—DIRECTION TO PAY DEBTS OF DONOR.—A direction by the donor to the
donee to pay certain debts of the donor is inconsistent with an in-
tention to make a gift of the money to the donee.

ID.—CHARITABLE GIFT—SELECTION OF INSTITUTION.—A charitable gift was
not consummated by the donor by reason of his having designated
the amount intended to be given, where he expressly left it to the
person drawing the money to select the institution to which the
money was to be given, and no such selection was made or agreed
upon by the donor in his lifetime.

APPEAL from a judgment of the Superior Court of Sierra
County and from an order denying a new trial. Stanley A.
Smith, Judge.

The facts are stated in the opinion of the court.

J. M. Walling, for Appellant.

Frank R. Wehe, for Respondent.

HARRISON, J.—The plaintiff seeks by this action to re-
cover from the defendant certain moneys claimed to belong
to the estate of James Preston, of which he is the adminis-
trator. The defendant claims a right to the money by virtue
of a gift *causa mortis* from the intestate. Judgment was ren-
dered in favor of the plaintiff, and the defendant has appealed.

On the nineteenth day of March, 1897, James Preston, be-
ing ill and expecting to die from his illness, placed in the
hands of the defendant two savings bank books, saying: "I
want you to draw this money and pay it out as I wish to have
it done, to different parties. I want you to draw the money
and pay Damas Sirard one thousand dollars; pay John Sher-
man, in North San Juan, for one week's board, about six dol-
lars, I suppose, and pay to A. J. Grimes ten dollars. Then he
said, 'You select some charitable institution and give or send

to them one hundred dollars from this money.' That was the talk right then. He said nothing to me about any balance, if any should remain. He did not specify any charitable institution, but told me to select one, and I asked him what one, and he said he did not know—that I should select one and suit myself." He also said that he wanted the defendant to pay his funeral expenses. "He wanted me to pay all—to pay these parties certain amounts, and pay all his little bills he might be owing, and all expenses and everything of that kind." Orders upon the banks for the money were then prepared by the defendant and signed by Preston, and the defendant said to Preston: "Now, Jim, if you get well, I will keep this money safely for you and you shall have every nickel of it back. You need not be afraid of losing any of it through me." The orders were sent to the banks at San Francisco and Sacramento, and subsequently the money represented by them was received by the defendant. · Preston died on the 22d of March. The court found that in the making of said orders and delivery of said bank books the deceased did not intend to make a gift of his property to any one, or to transfer the title to said property to any one, but intended to retain his right and dominion over it during his lifetime; "that in the delivery of said bank books and making of said orders it was intended by said Preston to constitute said Ketchum his agent for the purposes above set forth, and it was intended by said Preston that such disposal of his said property should only take effect at the time of his death," and thereupon rendered judgment in favor of the plaintiff.

Money deposited in a savings bank may be the subject of a gift *causa mortis,* if it appears from the transaction that the donor intended thereby to confer upon the donee a present right to the money, and, at the same time, clothed him with the means of obtaining it. The delivery, however, must be as a gift *in presenti,* and not for the purpose of making a future disposal of it under the directions of the donor. If the donee is merely empowered to draw the money, and is thereafter to dispose of it in accordance with instructions from the donor, he is only an agent of the donor and his agency terminates with the death of the donor. It is essential to a gift

*causa mortis* that the donor shall confer upon the donee, at the time of the gift, a present title and property in the thing given; and, if the thing given is capable of corporeal delivery, there must be an actual or symbolical delivery of it, or, if it is not so capable, the means of obtaining control and possession of the thing must be then given. (Civ. Code, sec. 1147.) Unless the property in the thing given vests in the donee it remains in the donor, and there is only a purpose of intention on his part to make a gift. Such purpose, or intention, is incapable of enforcement. The delivery must accompany the gift and must be made at the same time. It is the delivery by the donor, and not the possession by the donee, that makes the gift effective. (*Cutting v. Gilman,* 41 N. H. 147; *Miller v. Jeffress,* 4 Gratt. 472.) The law requires a gift *causa mortis* to be absolute at the time it is given, but adds to it the condition that it may be revoked at the will of the donor, and that it is revoked by his recovery; but if by the terms of the gift it is not to take effect until after the death of the donor, the disposal is testamentary and not a gift. Such limitation is a condition precedent by which the gift is prevented from becoming absolute in the lifetime of the donor, and the thing given is therefore a portion of his estate at the time of his death. (*Daniel v. Smith,* 64 Cal. 346; 75 Cal. 548; *Walter v. Ford,* 74 Mo. 195; 41 Am. Rep. 312; *Basket v. Hassell,* 107 U. S. 602.)

At the time that Preston handed the bank books to the defendant he said nothing that in terms indicated his intention to make a present gift of the money. His remark, "I want you to draw this money and pay it out as I wish to have it done, to different parties," and the subsequent designation of the persons to whom the money was to be paid, merely indicated the disposition which he wished made of his money after his death, and his selection of the defendant as his agent for that purpose. Certain directions for the payment of a portion of the money were then given, but at the time of giving them Preston said nothing indicating an intention to give any money to the defendant, or of the disposal to be made of what might remain after making the payments which he then directed. The language used by him indicated that the defendant was to pay

out whatever money he might draw as Preston should direct. The statement by Preston to Hourcade, prior to his giving the bank books to the defendant, of what he intended to do, and his subsequent statement to Wayman, in the absence of the defendant, that he wished the defendant to have the balance, might be corroborative of any statement of the defendant as to what transpired between him and Preston, but it is not available to make the terms of the gift different from what the defendant stated them to be, or to establish a gift to the defendant at the time he received the books. The defendant said that he had no other conversation with Preston, and that he said nothing to him about any balance, if it should remain.

That it was not the intention of Preston to direct the defendant to make an immediate payment to the persons designated, and that the defendant was not authorized to make such payment, is shown by the defendant's statement that at the time he received the bank books he told Preston that he would keep the money safely for him and that he should have it all back if he recovered. It is also to be noted that, with the exception of the one hundred dollars which was to be given to some charitable institution to be afterward selected by the defendant, Preston was under some obligation to each of the persons to whom he directed the defendant to pay the money; and, while the use of the word "pay" might be consistent with an intention to make a gift, it is inconsistent with such intention when used with reference to the discharge of an obligation. It cannot be held that there was a gift by Preston to any charitable institution, since the defendant was to select the institution to which the money was to be given.

The judgment and order are affirmed.

Garoutte, J., and Van Fleet, J., concurred.