[S. F. No. 735. In Bank.—August 23, 1898.]

W. H. KNIGHT, Administrator, etc., Appellant, v. W. G. TRIPP, Respondent.

GIFT—ASSIGNMENT—CONTEMPLATION OF DEATH—PRESUMPTION.—An assignment by an invalid woman about to undergo a surgical operation, of all of her property, in favor of one who had no claim upon her estate, and who was under no obligation to supply her wants, must be presumed, in the absence of direct evidence of her intention to make a gift of the property absolutely *inter vivos*, to have been made in contemplation of her death under the surgical operation.

ID.—GIFT CAUSA MORTIS — CONSTRUCTION —TESTAMENTARY DISPOSITION.— A gift *causa mortis* is testamentary to the extent that it is made in contemplation of death, and becomes absolute only upon the death of the donor; but, being in contravention of the general rules for the testamentary disposition of property, and delivery of the thing given being made a substitute for the formal writing required for a testamentary disposition, such a gift is not regarded with favor, and clear and convincing proof is required of the requisites essential to constitute it.

ID.—REQUISITES OF GIFT—EXPRESSED INTENTION—DELIVERY.—To constitute a gift *causa mortis* there must be the same requisites which are required to constitute any gift *inter vivos*, viz., an intention to make the gift, expressed orally or in writing, and the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof.

ID.—WRITTEN INSTRUMENT—COMPLETION OF GIFT.—A gift *causa mortis* is not aided by the execution of a written instrument of conveyance or assignment, further than to show the intention of the donor, and to designate the property intended to be given. Such a gift cannot be effected by any formal instrument; but the fact of delivery of the thing given is essential to convert the unexecuted and revocable purpose into an executed and completed gift.

ID.—ORAL DECLARATIONS—AGENCY.—Oral declarations by an invalid woman, preceding a written assignment of her personal property, in contemplation of death, stating: "I want to give it to you, or place all of it in your hands, and tell you those I want should have it"; and other such declarations accompanying the transfer of bank-books, to the effect that she wanted to assign the money, and give it to the transferee with all the rest of her property, under certain conditions that she had given in regard to its disposal, are insufficient to sustain the claim of a gift, and are to be construed as expressing a desire to make the transferee her agent for the disposition of her property rather than her beneficiary.

ID.—CONSTRUCTIVE DELIVERY—KEY OF RECEPTACLE.—A constructive delivery is limited to such property as is not capable of actual transfer or immediate delivery. A delivery of the key to a receptacle,

which is itself present and capable of delivery, will not of itself constitute delivery of its contents; and the delivery of the key of a locked secretary which remained in the possession of the deceased until her death is not the delivery of indorsed notes and certificates of stock placed in a locked tin box inside of such secretary.

ID.—FAILURE OF INTENTION OF DECEASED.—The deceased having evidently intended to dispose of her entire estate under the assignment made, and that the assignee should make the payments directed on condition of his receiving the whole estate, upon his failure to receive the principal portion of it for want of delivery during her lifetime, the entire purpose of the deceased must fail. Unless the gift can be maintained as a whole, the failure of the principal part entirely defeats it.

ID.—ASSIGNMENT OF BANK-BOOKS—ORAL WILL—TERMINATION OF AGENCY—ESTATE OF DECEASED ASSIGNOR.—An assignment of bank-books, with oral instructions from the assignor to the assignee to pay out the money after the assignor's death for debts and funeral expenses, and the residue to beneficiaries orally named, is an intended testamentary disposition of the estate, which cannot be made orally; and the assignee being merely an agent whose authority terminated with the death of the principal, the money remained a part of the estate of the deceased assignor, subject to administration.

APPEAL from an order of the Superior Court of Alameda County granting a new trial. F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

Frederick E. Whitney, and Reed & Nusbaumer, for Appellant.

Welles Whitmore, and Cary Howard, for Respondent.

HARRISON, J.—The plaintiff, as the administrator of the estate of Elizabeth Cook, deceased, seeks by this action to recover from the defendant certain personal property, or its value, alleged to belong to said estate. The defendant claims the property under title derived from the deceased in her lifetime. Mrs. Cook had been ill for several months, and, with the purpose of seeking relief, was about to undergo a surgical operation from which she apprehended danger. On the morning of May 30, 1895, the defendant came to her house by previous appointment to see her, and she informed him of this purpose, and stated that she wanted to dispose of her property; that she had once made a will, but had destroyed it, and had made up her mind that she might as well give her property away while she was living, say-

ing to him: "I want to give it to you, or place all of it in your hands, and tell you those whom I want should have it." Upon the defendant's suggestion, she consulted an attorney in the matter, under whose advice she acted, and on the next day signed the following instrument, which had been prepared by the attorney, and delivered it to the defendant:

"For and in consideration of one dollar, to me in hand paid by W. G. Tripp, and other considerations to me moving, I do hereby sell, assign, transfer, and deliver to said W. G. Tripp all my household furniture, wearing apparel, and all other personal property owned or held by me in that certain house in the city of Oakland known and designated as 680 Tenth street.

"Dated May 31, 1895.

"ELIZABETH L. COOK."

This instrument is in form a bill of sale, but defendant testified that no consideration was given therefor. On the same day she assigned to the defendant three bank-books representing money deposited by her in certain saving banks in Oakland, and which he immediately caused to be transferred to his account in the banks. On the next day she indorsed to him certain promissory notes held by her, and also assigned to him two certificates of stock for five shares each in the Equity Building and Loan Association. She underwent the surgical operation on the 12th of June, and in two days thereafter died. The present action was brought to recover the above property. Judgment was rendered for the plaintiff, and upon motion of the defendant a new trial was granted. From this order the plaintiff has appealed.

It is claimed by the defendant that by this transaction the property was transferred to him absolutely as a gift *inter vivos,* while the plaintiff contends that Mrs. Cook intended no more than to transfer it as a gift *causa mortis,* and that her intention failed of effect for the reason that the property was not delivered by her to the defendant.

The circumstances attending the transaction very clearly preclude it from being considered as a gift of the property *inter vivos.* Mrs. Cook was an invalid fifty-four years of age, and it must be assumed that she had at least a hope that she would come safely out of the surgical operation that she was about to

undergo, and that her life would be prolonged hereby. Under these circumstances, it would require very clear evidence to authorize a conclusion that she intended to divest herself absolutely of all her property in favor of one who had no claim upon her estate, and who was under no obligation to supply her wants. There is no direct evidence that such was her intention, or that anything to that effect was said by her. Her disposition of the property was evidently made in contemplation of her death under the surgical operation, but it was not necessary for her to state that fact as one of its terms. If the circumstances under which it was made were such as to authorize such conclusion, it will be treated the same as if it had been so stated by her. (Civ. Code, sec. 1150.)

At the interview between them on May 31st the defendant prepared the following memorandum of the disposition that Mrs. Cook desired to be made of the property to be transferred to him:

"May 31, 1895.

"Instructions of Mrs. E. L. Cook as to the Disposal of her Property in the Event of Death.

"W. G. Tripp is to have the house and lot and contents of the house at 680 Tenth street, and all other real estate, and is to pay all debts and funeral expenses, for permanent care of the cemetery lot, and such monuments as he may choose for herself and husband. To pay E. A. Jenner, of Belvedere, two thousand dollars; Fred B. Kimball, Webster City, Iowa, one thousand dollars; Fred W. Cook, New York, one thousand dollars; C. F. Nicklaus, Oakland, Cal., two thousand dollars; Mrs. Fannie Hilton, Oakland, five hundred dollars; Miss Grace Hilton, five hundred dollars; Miss Carrie Hilton, five hundred dollars; Mrs. Pierce, Oakland, one thousand dollars; Miss Maggie Gates, Oakland, two hundred dollars.

"Any property remaining after these instructions are carried out is to belong to G. W. Tripp."

The following addition appears to have been afterward made to this memorandum: "June 8, 1895. Trunk and contents in closet under the back stairs is to be delivered to Mrs. Hilton." This memorandum is not signed by anyone, nor does it appear that Mrs. Cook ever saw it or knew its contents, but the defend-

ant testified that he prepared it in her presence in the course of the conversation between them in regard to the disposition of the property, and that it contains the substance of what was said to him by her. By this memorandum the disposition of the property is limited to the *event of death,* and the defendant was to have the property "remaining after these instructions are carried out." He also testified that the money was to be paid to these persons only in the event of her death. It is very clear, therefore, that it was not intended by Mrs. Cook to make a present, irrevocable gift of the property to him, and that she did not intend that he should in any event have all of the property for himself.

Whether the transaction constituted a valid gift *causa mortis* must depend upon what was said and done by Mrs. Cook at the time of the alleged transfer.

Gifts *causa mortis* are not regarded in the law with favor, since they are in contravention of the general rules prescribed for the testamentary disposition of property, and therefore should in all cases be established by clear and convincing proof of the requisites of such a gift. For the purpose of preventing frauds and perjuries, the statute requires a testamentary disposition of property to be made by a written instrument, executed with certain formalities, and, while a gift *causa mortis* is testamentary to the extent that it is made in contemplation of death, and becomes absolute only upon the death of the donor, it is at the same time subject to the rules governing a gift *inter vivos.* The actual delivery of the thing given is made the substitute for the formal writing required for a testamentary disposition, but without such delivery the words of the donor are unavailing to constitute a gift. *Donatio perficitur possessione accipientis.* All gifts are necessarily *inter vivos,* for a living donor and a living donee are indispensable to a valid gift; but when the gift is made in contemplation of impending death, and as a provision for the donee in the event of such death, it is called a gift *causa mortis.* This designation of its character does not, however, change the elements requisite for rendering the gift complete. There can be no gift without an intention to give, and a delivery either actual or constructive of the thing given. The Civil Code, section 1146, defines a gift to be a transfer of personal property,

made voluntarily and without consideration, and the rule that mere words of gift are ineffective unless accompanied by a delivery to the donee of the thing given, if it is capable of delivery, is reproduced in section 1147. There must be both a purpose to give and the execution of this purpose. The purpose must be expressed—either orally or in writing—and it must be executed by the actual delivery to the donee of the thing given, or of the means of getting possession and enjoyment thereof. A written instrument may be available for designating the property intended to be given, as well as to show the intention of the donor, but by itself it no more establishes the gift than would the same words orally delivered by the donor. "A gift *causa mortis* is not aided by the execution of the written instrument, except so far as that may contribute to greater certainty in the proofs. Such gifts cannot be effected by formal instruments of conveyance or assignment. They are manifested by and take their effect from delivery." (*McGrath v. Reynolds*, 116 Mass. 566.) It is the fact of delivery that converts the unexecuted and revocable purpose into an executed and complete gift. (*Miller v. Jeffress*, 4 Gratt. 472; *Cutting v. Gilman*, 41 N. H. 147; *Emery v. Clough*, 63 N. H. 552; *Yancey v. Field*, 85 Va. 756; *Walsh's Appeal*, 122 Pa. St. 177; *Newman v. Bost*, 29 S. E. Rep. 848; *Hart v. Ketchum*, ante, p. 426.)

Only Mrs. Cook and the defendant were present at the interview between them, and the defendant is the only witness who gives any account of what was then said. None of the writings introduced have any reference to a gift, and, as there was no one else present at the conversation between the defendant and Mrs. Cook, the character of the transaction must be determined from his testimony alone. At the interview of May 30th she did not make any disposition of the property, but postponed her action until after she had consulted an attorney. Her statement at that interview, "I want to give it to you, or place all of it in your hands, and tell you those whom I want should have it," indicates merely a purpose which is not fully disclosed, and the second clause of the statement is to be regarded as signifying the meaning which she attached to the word "give" in the first clause, and is to be construed as her desire to make the defendant her agent for the disposition of her property,

rather than that he should himself be her beneficiary. What the advice of her attorney was is not shown, but under his advice the above assignments and instruments of transfer were prepared and were executed by her. It is not shown that anything was said by her at the time she signed these instruments, or on the next day when she indorsed the promissory notes and the certificates of stock. The defendant, when requested to state fully all that she said at the time she made the transfer of the bank-books to him, testified: "She said she wanted to assign this money to me; she wanted to give me this money with all the rest of her property, under certain conditions that she had given in regard to its disposal." These are all the expressions shown to have been made by Mrs. Cook of her intention in thus transferring the property to the defendant, and it must be held that they are insufficient to sustain the claim of a gift.

The promissory notes and the certificates of stock were kept by Mrs. Cook in a tin box, which was locked and placed in a secretary, which was also kept locked. This secretary stood in the room which was occupied by Mrs. Cook during her illness, and remained there until after her death. There was also in the secretary some jewelry which does not appear to have been mentioned by her, and which the defendant says he did not have in his hands at any time until after her death, when he took it out of the secretary. On the 30th of May, at her first interview with the defendant, Mrs. Cook handed to him the key of the secretary, but, as she did not on that day determine the disposition she would make of her property, no significance can be attached to this act. No use appears to have been made by him of the key until June 1st, when he took the notes and certificates of the stock from the secretary, and after Mrs. Cook had signed the indorsements thereon he put them back into the box, locked it up, and put it into the secretary, where it remained until after her death. He appears to have retained the key to the secretary, and after her death he took from it the tin box with its contents. At the time Mrs. Cook gave him this key she did not accompany it with any words of gift, and her request to him to take it is more consistent with her desire that he should be merely its custodian than with a purpose to give him the secretary or any of its contents. The subsequent placing of

the notes and certificates in the secretary, or in the tin box, after their indorsement by Mrs. Cook, would not in the absence of words to that effect, constitute a delivery of these instruments to the defendant. As the secretary, as well as all the household furniture, continued to remain in the possession of Mrs. Cook until her death, the above instrument of transfer is not available to the defendant to establish a delivery of the articles mentioned therein. A constructive delivery which will satisfy the statute is limited to such property as is not capable of actual transfer or immediate delivery. A delivery of the key to a receptacle, which is itself present and capable of delivery, will not of itself constitute a delivery of the contents of the receptacle. (*Hatch v. Atkinson*, 56 Me. 314; *Keepers v. Fidelity etc. Co.*, 56 N. J. L. 302; *Gano v. Fisk*, 43 Ohio, 462; 54 Am. Rep. 819; 2 Schouler on Personal Property, sec. 163; *Newman v. Bost, supra*.) In *Debinson v. Emmons*, 158 Mass. 592, it appeared that the donee was a joint occupant with the donor of the room in which the trunk was placed, and the opinion of the supreme court was rested upon the decision of the trial court that the evidence established an actual delivery of the trunk.

It is evident that it was the intention of Mrs. Cook to dispose of her entire estate for the purposes mentioned in the memorandum of May 31st, and that the payments therein named were not to be made by the defendant unless he should receive the whole of her estate. It was clearly her intention that he should not have the whole of her estate, and, as he would not be required to make any of the payments in case he should receive only a portion of it, it must follow that by reason of his failure to obtain the property, other than the money, for want of a delivery in her lifetime her entire purpose must fail. Unless the gift can be maintained as a whole, the failure of the principal part must defeat it entirely. (See *McGrath v. Reynolds, supra*.)

The moneys in the bank at the time of the assignment of the bank-books to the defendant amounted to $8,702.53, and by the memorandum of instructions made by the defendant he was directed to pay out $8,700, aside from all debts and funeral expenses. The value of the entire personal property received by him is $10,802, and he testified that he has already paid $1,800 for debts and expenses. The character of the assignment of

the bank-books is not shown, but, as it was sufficient to enable the defendant to obtain the money represented thereby, it may be considered with the same effect as if the deceased had drawn the money herself and placed it in his hands, to be disposed of as directed in the memorandum, and that the moneys named in the memorandum were only to be paid to the persons therein mentioned in the event of her death. She did not by this act make a gift of the money to the defendant, but constituted him her agent to make the payments for the purposes and to the persons named in the memorandum, "in the event of [her] death"; and only after the "instructions" thus given by her had been carried out was any property remaining to belong to the defendant. Such disposition of her estate was testamentary, and could not be made orally. The defendant was merely her agent to carry out her instructions, and upon her death his agency terminated, and the money remained a part of her estate, subject to administration. (*Hart v. Ketchum, supra.*)

The order granting a new trial is reversed.

Temple, J., McFarland, J., Garoutte, J., Henshaw, J., and Van Fleet, J., concurred.