[S. F. No. 4717.   Department Two.—March 5, 1908.]

## ANN M. BEEBE, Respondent, v. OLIVER C COFFIN et al., Appellants, and HENRY W. BEEBE, as Administrator of the Estate of WM. S. BEEBE, Deceased, Respondent.

GIFT—DELIVERY—RELEASE OF DOMINION AND CONTROL — GIFTS CAUSA MORTIS—A gift is a transfer of personal property made voluntarily and without consideration, and a verbal gift is not valid unless the means of obtaining possession and control of the thing are given, nor, if it is capable of delivery, unless there is an actual or symbolical delivery. The delivery must be absolute, that is, the donor must not only part with the possession of the property, but must relinquish to the donee all dominion and control over it. These requirements hold true of all gifts, whether they be gifts *inter vivos* or gifts *causa mortis*. If the transfer of such dominion and control is postponed to some future date, as until the date of the death of the donor, it becomes thereby no more than an unexecuted and unenforceable promise to make a future gift.

ID.—DISTINCTION BETWEEN GIFTS CAUSA MORTIS AND INTER VIVOS.—The single vital distinction between a gift *causa mortis* and a gift *inter vivos* is that the former, being in its nature testamentary, is subject to the donor's revocation while he lives.

ID.—DELIVERY OF RELEASE OF MORTGAGE—INCOMPLETE GIFT.—A mortgagee inclosed a release and satisfaction of the mortgage in a sealed envelope, and delivered the same to the mortgagor, who had no actual knowledge of what the envelope contained, with instructions which limited its taking effect until after the death of the mortgagee. During the life of the mortgagee, the envelope remained in his safe deposit box, subject to his call. *Held*, that the facts were insufficient to establish a gift *causa mortis* of the mortgage indebtedness.

APPEAL from an order of the Superior Court of Alameda County refusing a new trial.   F. B. Ogden, Judge.

The facts are stated in the opinion of the court.

J. C. Coogan, for Appellants.

Campbell, Metson, Drew, Oatman & Mackenzie, and Robert B. Gaylord, for Respondent.

McFARLAND, J.—This is an appeal taken by Oliver C. Coffin and Ella F. Coffin, his wife, from the order of the court denying their motion for a new trial. The action was. commenced by Ann M. Beebe, to foreclose a mortgage given by the Coffins to secure their promissory note for one thousand eight hundred dollars. Henry W. Beebe, as administrator of the estate of William S. Beebe, deceased, filed his. answer and cross-complaint, setting up an assignment by Ann Beebe to his intestate of the note and mortgage. The Coffins answered, likewise setting up an assignment of the note and mortgage by Ann Beebe to William S. Beebe, deceased, and further pleaded a satisfaction and release executed by William S. Beebe. The court found that Ann Beebe had assigned the note and mortgage to William S. Beebe, but further found that the release and satisfaction, execution of which had been pleaded by the Coffins, had not been delivered by William S. Beebe to them or either of them, and ordered judgment in foreclosure in favor of Henry W. Beebe, administrator of William S. Beebe's estate. The case is one turning upon the completeness of the execution of an attempted gift *causa mortis* by William S. Beebe to the Coffins. The case is free from the slightest doubt or taint of fraud. It may not be gainsaid from the evidence that William S. Beebe did attempt to give to the Coffins, or to Oliver C. Coffin, a release of the debt, and the single question in the case is whether the court erred in holding that the attempted gift was incomplete and therefore nugatory.

The facts, concerning which there is no controversy, are that the Coffins executed a note and mortgage to Ann Beebe. William Beebe took an assignment of the note and mortgage to himself. Oliver Coffin was the trusted friend and business. agent of William Beebe. Beebe procured a safe deposit box in the joint name of Coffin and himself, and therein were placed valuable personal properties of Beebe. Coffin was given the keys to the box. Whenever Beebe wanted any of his. valuables he would so inform Coffin, and Coffin would open the box and bring them to him. The rent of the box was paid by Beebe. The Coffins, by direction of Beebe, paid the interest on the note and mortgage to Ann Beebe after William Beebe had taken the assignment of the note and mortgage. Beebe was in ill health and seemed to be making provision for the.

disposition of his properties in the event of his death.    He would make separate packages of the contents of the box and give Oliver instructions as to the dispositions to be made of them.    From time to time he would instruct Oliver to bring him the contents of the box, and, after examination, he would make changes in his dispositions and directions.    Upon one of these occasions he handed to Coffin a sealed envelope bearing Coffin's name, saying, "Here, Oliver, you take this. I shan't want it any more.    You take it and take care of it and put it in the safe deposit with your other things, and when the end comes you follow my instructions."    Up to the time of Beebe's death Coffin had no positive knowledge of the contents of the envelope, but by inference, gathered from statements of Beebe, he believed that the envelope contained a release of the note and mortgage.    After Beebe's death he opened the envelope and found in fact that it did contain such release, together with a note signed by Beebe and reading as follows: "Oliver C. Coffin: This document is to be placed on record immediately after my death, which cancels all claims from any source, either principal or interest."    After Beebe had given Coffin this sealed envelope Coffin continued to pay the interest upon the note, as theretofore, to Ann Beebe, and so continued to do until the death of William Beebe.    He testifies that he did this under William Beebe's instructions, William Beebe at the same time cautioning him not to pay any of the principal.    Beebe never told Oliver that he had executed to him a release.

A gift is but the transfer of personal property made voluntarily and without consideration and a verbal gift is not valid unless the means of obtaining possession and control of the thing are given, or, if it is capable of delivery, unless there is an actual or symbolical delivery.    (Civ. Code, secs. 1146, 1147.)    And the delivery must be absolute; that is, the donor must not only part with the possession of the property, but must relinquish to the donee all dominion and control over it.    (14 Am. & Eng. Ency. of Law, p. 1019; 20 Cyc. of Law and Proc., p. 1195.)    This holds true of all gifts, whether they be gifts *inter vivos* or gifts *causa mortis.*    As is pointed out in *Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267], all gifts are necessarily *inter vivos,* since a living donor and a living donee are indispensable to a valid gift; but when the gift is

made in contemplation of impending death, and as a provision for the donee in the event of such death, it is called a gift *causa mortis.* "This designation of its character does not, however, change the elements requisite for rendering the gift complete. There can be no gift without an intention to give, and a delivery either actual or constructive of the thing given." (*Knight* v. *Tripp,* 121 Cal. 674, [54 Pac. 267].) Thus it cannot be too clearly borne in mind that the single vital distinction between a gift *causa mortis* and a gift *inter vivos* is that the former, being in its nature testamentary, is subject to the donor's revocation while he lives. But the essential of delivery, of the immediate surrender of all dominion and control over the subject of the gift, is as absolutely necessary in the one class of gifts as in the other. Falling short of such unconditional delivery, a gift is incomplete. If the transfer of such dominion and control is postponed to some future date, as until the date of the death of the donor, it becomes thereby no more than an unexecuted and unenforceable promise to make a future gift. (*Hibbard* v. *Smith,* 67 Cal. 547, [56 Am. Rep. 726, 4 Pac. 473, 8 Pac. 46] ; *Daniel* v. *Smith,* 64 Cal. 346, [30 Pac. 575] ; *Zellar* v. *Jordan,* 105 Cal. 143, [38 Pac. 640] ; *Hart* v. *Ketchum,* 121 Cal. 426, [53 Pac. 931] ; *Pullen* v. *Placer Co. Bank,* 138 Cal. 169, [94 Am. St. Rep. 19, 66 Pac. 740, 71 Pac. 83].) In illustration of the important fact that immediate and complete dominion over the thing given must be surrendered by the donor and accepted by the donee, the cases of *Pullen* v. *Placer Co. Bank,* and *Basket* v. *Hassell,* 107 U. S. 602, [2 Sup. Ct. 415], are instructive. In *Pullen* v. *Placer Co. Bank,* a father had given his son a check for one thousand dollars, upon the understanding that the son should not present the check to the bank for payment until after the death of the father. The son retained possession of the check and did present it according to instructions after the father's death. This court held the transaction invalid as a gift, citing *Knight* v. *Tripp* above referred to, and saying: "A gift vests the donee with the absolute property in the thing given, and is no longer subject to the control of the donor. If, on the other hand, the thing given remains under the control of the donor, or, except in the case of a gift *causa mortis,* is subject to his revocation, his gift is not complete. There is no difference, however, in this

particular between a gift *inter vivos* and a gift *causa mortis*. In either case it is not complete unless there is an actual or symbolical delivery to the donee of the thing to be given. In the present case the gift was verbal, and the property which the father intended to give to his son was money on deposit in the bank. The check was not itself the property which the father intended to give, but was merely a direction to the defendant to pay one thousand dollars to the son. . . . The check was not a symbolic delivery of the money, but it was a delivery of the means by which the son could obtain possession of the money. It was, however, subject to revocation by the father at any time before its presentation to the bank, and was in fact revoked by his death." In *Basket* v. *Hassell*, 107 U. S. 602, [2 Sup. Ct. 415], it is said: "The instrument or document must be delivered to the donee, so as to vest him with an equitable title to the fund it represents, and to divest the donor of all present control and dominion over it, . . . and a delivery which does not confer upon the donee the present right to reduce the fund into possession by enforcing the obligation according to its terms will not suffice."

Measured by these indisputable standards, the conclusion is irresistible that the attempted gift in this instance fell short of completeness. The release was in a sealed envelope. The donee had no actual knowledge as to what the envelope contained. Still less did he have any present and absolute right to such dominion and control over the release as would have justified him in placing it of record during the lifetime of Beebe. Both parties to it concurred in the understanding that the transaction, whatever it was, evidenced by the sealed envelope, was not to take effect until after Beebe's death, and the sealed envelope remained in Beebe's box with Beebe's other personal effects, subject to his call, and subject also to such change in disposition as he might decide to make of it, and as in fact he did make of other of his personal effects therein contained. Under circumstances thus shown, the finding of the court against the completeness and delivery of the attempted gift may not here be disturbed, for which reason the order appealed from is affirmed.

Henshaw, J., and Lorigan, J., concurred.