[Civ. No. 3289. Third Appellate District.—June 29, 1927.]

EMMA S. TOPLEY, as Administratrix, etc., Appellant, v. ANNIE D. TOPLEY MEGARRY, as Executrix, etc., et al., Respondents.

Frank L. Coombs and Nathan F. Coombs for Appellant.

Joseph M. Raines and Theodore W. Chester for Respondents.

PLUMMER, J.—A corporation known as the Topley Company was incorporated in July, 1904, by the Topley family. Upon incorporation there was issued to James Topley, the father, two certificates, one representing 196 shares of the capital stock of said corporation and the other representing 200 shares. There was also issued to Anna Topley, the mother, one share and to the three childern of said James Topley and Anna Topley, to wit, to James H. Topley, William H. Topley, and Annie D. Topley Megarry, one share each. The father conveyed certain property to the corporation in consideration of the shares issued to him.

The father, James Topley, died on or about the twentieth day of January, 1905, leaving a will executed in 1899, whereby he devised to his wife, Anna Topley, all of his property.

The complaint alleges that on or about the sixteenth day of January, 1905, the said James Topley caused said certificates of stock issued to him to be indorsed, assigned, and delivered to his wife, Anna Topley. On the third day of February, 1905, the said Anna Topley signed an indorsement on the back of each of the certificates issued to the said James Topley, as heretofore stated, the indorsement being as follows:

"I hereby assign all my right, title and interest in this certificate one, calling for 196 shares to J. H. Topley, William H. Topley and Annie D. Topley Megarry in equal proportions, February 3rd, 1905."

The indorsement on the second certificate referred to as issued to James Topley was in the same language, save and except as to the number of shares.

The certificates referred to were not detached from the stubs in the stock-book of the corporation, and after the indorsements herein referred to, the stock-book, including the certificates, was placed in the safe belonging to the company in the storeroom where the company did business, which business was that of conducting and maintaining a drug-store. So far as the record shows, the stock-book, with certificates therein, was kept and remained in the safe

belonging to the company until some time in December, 1921. The two sons remained in the employ of the company in the conduct of the drug-store just referred to, James H. Topley acting as manager. In the latter part of the year, 1921, James H. Topley became ill and went to a hospital some time in December of that year. Prior to going to the hospital James H. Topley brought to Anna Topley all the books of the corporation. Some weeks later in examining the stock-book, Anna Topley discovered her signature to the indorsements herein mentioned and proceeded to draw red ink lines through the same and to mark the indorsements "cancelled." On January 20, 1922, James H. Topley died. On November 23, 1923, Anna Topley executed her last will and testament devising all of her property to William H. Topley and Annie D. Topley Megarry. On March 30, 1924, Anna Topley died. Thereafter, the will executed by James H. Topley in 1899 was filed and admitted to probate; also, the will executed by Anna Topley on November 23, 1923, was filed and admitted to probate. Thereafter, this action was begun by Emma S. Topley, as administratrix with the will annexed of James H. Topley, deceased, to recover a one-third interest in the 396 shares of the corporate stock of the corporation issued to James Topley, as hereinbefore stated. The defendants had judgment and the plaintiff appeals.

The court found that the attempted indorsement and assignment of the certificates of the capital stock of said corporation by the father, James Topley, in 1909 was void. The will of James Topley, admitted to probate, conveyed all of his interest in said certificates of stock to his wife, Anna Topley, the person to whom the assignment of said certificates of stock was attempted to be made.

While the mother, Anna Topley, died preceding the actual date of the trial of this cause, her testimony was taken by way of deposition and introduced in evidence in that form. It appears from the deposition of the mother that prior to the time when she affixed her signature to the indorsements on the back of the certificates, as stated, she had become ill and was going south for medical treatment; that just prior to her leaving for the south on account of her health, James H. Topley brought the stock-book containing the certificates of stock referred to with the indorsements, which we have set

forth herein, on the reverse side of said certificates, and in the language of the witness said: "Mother, you are about to go south. I have a little something here that I want you to sign to protect us children if you should meet with an accident. I told him, 'No, I'll not sign.' He said, 'Mother, if you sign, I promise you on your safe return back that I put everything back just as it was before.' I signed what he· gave me to sign without reading it."

So far as the record shows, James H. Topley never mentioned this transaction to either his brother or sister. Thereafter, and during the period of about nineteen years, the business of the company was conducted, Anna Topley acted as president, the son William H. Topley acted as vice-president, and James H. Topley acted as secretary and treasurer. The income tax returns of the company made out by James H. Topley, in one of its schedules, gave the name of Anna Topley as president, owning 397 shares; William· H. Topley as one share, and James H. Topley as one share. The income tax returns also set forth the respective salaries of each. The mother acted as president of the corporation, signing all papers as president and visited the store about three times a week.

There appears no testimony in the record indicating that the mother, Anna Topley, in February, 1905, or at any other time, intended to make a present gift of her interest in the certificates of stock referred to, to her three children or to any of them. The evidence which we have quoted of what occurred at the time of the indorsements justifies the conclusion of the trial court that there was no intention to pass title to said certificates of stock by said Anna Topley to her three children or to any of them. The finding of the court is in the following language:

"That the placing of said writings in the possession of James H. Topley was without any intention, purpose, belief or understanding on the part of Anna Topley or James H. Topley that they would pass title to said stock, or any part thereof. Both of said parties at said time believed, understood and intended that no title would pass thereby.

"That neither William H. Topley nor Annie D. Topley Megarry knew anything about said writings until some time in January, 1922, and neither of said parties ever claimed or

asserted any rights thereunder. No delivery of said writings, or either of them, was ever made to said parties, or to either of them.''

We may add that the testimony which we have quoted surrounding the circumstances of the signing of the indorsements on the back of the certificates would have justified a further order finding that whatever Anna Topley then and there did was testamentary in character, and not an act divesting her of either ownership or control, it being evident that no gift or transfer was intended, unless the said Anna Topley failed to return alive.

Upon this appeal the finding of the court that no present title passed from Anna Topley to her three children on the third day of February, 1905, appears not to be questioned. The attack upon the findings, conclusions of law, and judgment of the trial court is based entirely upon the question of laches. It is argued that as during the nineteen years intervening between the date of placing her signature upon the certificates referred to and the erasure thereof by the said Anna Topley nothing was done by the said Anna Topley in relation thereto, the defendants are now estopped to rely upon the fact that no present gift of the stock was intended at the time of the indorsement and that the indorsement was only testamentary in character. The drawing of red lines through the indorsements and marking the same "cancelled" by Anna Topley in 1922 would not, of course, affect in anywise the transaction in relation to the certificate of stock in February, 1905. That act not constituting a present gift and being only testamentary in character and void for that reason, does the question of laches arise in this case? All the testimony set forth in the transcript is to the effect that all three of the children recognized and acknowledged the mother's ownership in and to the certificates of stock mentioned during the entire period intervening between February 3, 1905, and the date of the death of the son, James H. Topley. As set forth in 10 Cal. Jur. 520, laches is defined as:

"Such neglect or omission to assert a right, as taken in conjunction with the lapse of time, more or less great, and other circumstances causing prejudice to an adverse party, operates as a bar in a court of equity.''

And, as stated on page 534 of the same volume:

"The defense of laches is available whenever a demand or other preliminary action is necessary on the part of the plaintiff and such action is not taken within the period of the statute of limitations."

No title to the certificates of stock having passed in February, 1905, from Anna Topley to the three children and no claim thereto having been made by any of the three children during the intervening period of time, and no ownership therein having been asserted by any of the three children, we do not very well perceive how the subject of laches can enter into this action and justify a holding that an act which was purely testamentary in character and therefore void in 1905 now constitutes a gift and transfer of title. The stock-book said by appellant to be in the possession of James H. Topley was in the safe owned by the company, and leads us well to the conclusion that the stock-book was in the possession of the company.

The complaint in this action bases the right of the plaintiff to the alleged assignment and transfer of the certificates of stock made by Anna Topley on February 3, 1905. There is no asserted claim of ownership, dominion, or anything which would indicate a claim of ownership and dominion over the stock by reason of any act or thing done or performed during the intervening nineteen years, and if the testimony shows and justifies the conclusion of the trial court as we have said, that no title then and there passed, the plaintiff's action must fail. Had the deceased, James H. Topley, during the intervening period, asserted ownership to the certificates of stock, or had any of the children during said period asserted ownership, or taken any action indicating ownership of said certificates, or had any of them exercised any dominion or control over said certificates, or done anything which would have indicated to the mother, Anna Topley, that such ownership was claimed, then and in that case it might be argued that Anna Topley acquiesced in such claim of ownership by not having brought an action to have the alleged transfer of title adjudged ineffective. We do not need to review the authorities cited by appellant on the subject of laches, because the circumstances of the case which we have related in brief show that they are inapplicable.

■ That the trial court was justified in finding that no title passed from Anna Topley to the three children, or any of them, under the evidence in this case, is sufficiently supported by the following authorities: *Ruiz* v. *Dow,* 113 Cal. 490 [45 Pac. 867]; *Knight* v. *Tripp,* 121 Cal. 674 [54 Pac. 267]; *Kenney* v. *Park,* 137 Cal. 527 [70 Pac. 556]; *Estate of Hall,* 154 Cal. 527 [70 Pac. 556]; *Williams* v. *Kidd,* 170 Cal. 631 [Ann. Cas. 1916E, 703, 151 Pac. 1]. Practically all of the cases in California on the subject of gifts are cited in the authorities here mentioned. All the authorities unite in holding that intent as well as manual tradition are necessary to constitute a gift. This testimony shows the trial court was justified in holding as entirely wanting in the case at bar.

No reason having been called to the attention of this court as to why the judgment of the trial court should be reversed, it is hereby ordered that the judgment of the trial court be and the same is hereby affirmed.

Glenn, J., *pro tem.,* and Finch, P. J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on August 25, 1927.