**In the Matter of F. P. NEWPORT CORPORATION, Ltd., a corporation, Bankrupt.**

**No. 25303.**

United States District Court
S. D. California,
Central Division.

May 24, 1961.

---

6.   D.C.S.D.N.Y.1960, 183 F.Supp. 212, 217.

Trent G. Anderson, Jr., Los Angeles, Cal., for petitioner on review.

Fetterly & Fetterly, by Louis F. Fetterly, Los Angeles, Cal., for respondent on review.

Bailie, Turner, Lake & Sprague, by Richard A. Turner, Los Angeles, Cal., for trustee.

YANKWICH, District Judge.

Involved in this Review (11 U.S.C.A. § 67, sub. c) is an order of the Referee dated October 31, 1960, directing the trustee to pay the sum of $5,557.78 to Lloyds Bank Limited, as Executor of the estate of Charlotte Wales-Almy Cameron, deceased.

The order was reaffirmed by the Referee on March 28, 1961, after remand, in order to receive and authenticate additional documents, as appears from the supplement to the certificate of the Referee on review filed April 10, 1961.

The facts under which the controversy arises are these:

On February 20, 1937, Charlotte Cameron, also known as Charlotte Wales-Almy Cameron, filed a claim against the bankrupt in this proceeding, in which claim she constituted William H. Anderson, as attorney in fact to represent her in the matter. Anderson died in October, 1954.

On January 25, 1952, an order was made and entered allowing the claim for the sum of $5,557.78, the claim being referred to as Claim No. 18 in the proceeding.

One hundred per cent dividends have been declared on the unsecured claims in the proceeding in which Paul W. Sampsell is now the trustee. Sampsell, as such trustee, now has in his possession funds

allocated for payment in full of the claim of Charlotte Cameron.

While domiciled in England, Charlotte Wales-Almy Cameron died December 9, 1946, in London. After her death a document on the stationery of the Carlton Hotel, London S.W. 1, dated August 10, 1940, was discovered which was, excepting for the reference to the hotel and city, entirely in her handwriting. The document reads as follows:

"August 10th, 1940
"For
"Mr. William H. Anderson, Esq.
"Attorney at Law
"Suite 1112
"Black Building, So. Hill St.
    "Los Angeles,
        "California—U.S.A.

"I, Charlotte Cameron, O.B.E., of this hotel, being of sound mind and normal in every way, wish to state, that as England is at war and my life might be taken in Air-raids, I wish that the six thousand dollars owed me by Fred P. Newport of Newport & Co., if paid—I desire that Mr. Wm. H. Anderson's granddaughter Lynn Ellen and her brother Billy should each receive one thousand dollars as a legacy from me— Also that their Mother Virginia should also receive one thousand dollars—The other three thousand dollars—I desire to be equally divided between Mr. and Mrs. Wm. H. Anderson—Mr. Anderson has been my solicitor and his wife and I have been friends for years. This $6,000 is a debt, which its doubtful of ever being paid, in California, and in no way connected with any property of mine in England. "This is my wish,
            "Charlotte Cameron
"H. F. Metcalf,
    "Trustee in Bankruptcy for
    "Newport,
    "115 West Seventh St., Los Angeles
            "California"

Notice of the death of Charlotte Cameron was given to the trustee in this bankruptcy proceeding in 1947.

Charlotte Cameron left a Will dated November 19, 1946. The Will designated the petitioner Lloyds Bank Limited as the Executor thereof and by its terms revoked "all testamentary dispositions theretofore made" by the testatrix. Probate of the Will was granted to petitioner Lloyds Bank Limited on March 19, 1947, out of the Principal Probate Registry of the High Court of England, and the Lloyds Bank Limited ever since has been and still is the qualified and acting executor of the Will.

After extensive hearings, the Referee made findings substantially as outlined, and the following additional findings:

"VI. The aforesaid document dated August 10, 1940, was not an assignment and did not constitute a completed gift of the claim of Charlotte Cameron filed herein. There was no delivery of the said document by Charlotte Cameron or anyone acting on her behalf prior to her death, and she retained dominion over and control of the said document until her death. The said document dated August 10, 1940, was an attempted testamentary disposition which was revoked by the aforesaid will of Charlotte Cameron dated November 19, 1946.

"VII. W. H. Anderson, while a member of the law firm of Anderson & Anderson, performed services for said Charlotte Cameron in connection with the claim filed in this bankruptcy proceeding until about October 1948, after which date Trent G. Anderson of the same law firm rendered services relating to the said claim. No compensation was received by said W. H. Anderson, Trent G. Anderson, or the firm of Anderson & Anderson for such services. Said Trent G. Anderson is now deceased.

"VIII. The complete names of 'Lynn Ellen', 'Billy,' and 'Virginia' mentioned in the aforementioned document dated August 10, 1940, are, respectively, Lynn Ellen Sutherland, William T. Hayes, and Virginia Hayes."

From the foregoing the Referee concluded:

"I. That petitioner Lloyds Bank Limited is entitled to an order directing Paul W. Sampsell as trustee in the above-entitled proceeding to pay to said Lloyds Bank Limited as executor of the estate of Charlotte Wales-Almy Cameron, deceased, the sum of $5,557.78 in discharge of the claim of said decedent heretofore approved.

"II. That the objections to the petition of Lloyds Bank Limited on file herein be disallowed.

"III. That the claim for fees on behalf of W. H. Anderson, Trent G. Anderson, and Anderson & Anderson attorneys at law, be disallowed."

His order, under review, conformed to these conclusions.

■ The findings are attacked by the petitioner on review, to be referred to as "the Anderson group", as unsupported by the evidence in the record. The findings of a Referee must be accepted by the court "unless clearly erroneous". Federal Rules of Civil Procedure, Rule 52 (a), 28 U.S.C.A. following § 2680; General Bankruptcy Order 47, 11 U.S.C.A. following § 53.

Admitting this principle to apply in ordinary cases, it is contended by the petitioner on review that, in this case, the facts as to the nature of the letter and the circumstances under which it was written being undisputed, the Court is free to disregard the findings of the Referee.

Admittedly, when the facts are not in dispute, the reviewing court is not bound by the conclusions and inferences which the Referee draws therefrom. General Order 47, 11 U.S.C.A. following § 53;

Federal Rules of Civil Procedure, Rule 52(a) 28 U.S.C.A. following § 2680; Weisstein Bros. & Survol v. Laugharn, 9 Cir., 1936, 84 F.2d 419, 420; In re Morasco, 2 Cir., 1956, 233 F.2d 11, 14–15; Costello v. Fazio, 9 Cir., 1958, 256 F.2d 903, 908–909. See, In re Alberti, D.C. Cal.1941, 41 F.Supp. 380, 381; In re Kelly, D.C.Cal.1949, 85 F.Supp. 316. But the same principle does not apply when we are dealing with the interpretation which a referee places upon a claimed instrument of conveyance where evidence as to the relationship of the parties and the circumstances surrounding its execution is received. Here, this was done, at the original hearing, through brief testimony by one of Mr. Anderson's daughters and through answers to interrogatories and requests for admissions, and on remand, through letters and documents bearing upon the relationship of the Andersons and Mrs. Cameron and the estate.

■ When this is the case, although the facts adduced are undisputed, the trier of fact is free to choose one or another of the opposing inferences which may be drawn from them. See, Textron, Inc. v. Homes Beautiful, Inc., 8 Cir., 1958, 261 F.2d 646, 650. However, the statement of this axiom is purely academic. For I find myself in full agreement with the conclusions reached by the Referee.

■ Concededly, the letter signed by Mrs. Cameron on August 10, 1940, consisting, as it does, mainly of precatory words, even if considered as done with testamentary intent, was not effective as a will, for it was revoked by the formal Will dated November 19, 1946, executed by her subsequent to the date of this statement, which, as already stated, revoked all prior "testamentary dispositions". This letter, according to the answers of the respondent bank to Interrogatories 16, 17 and 18, based on the bank's practices and records

"was enclosed in a sealed parcel deposited at the Harrogate Branch of Lloyds Bank Limited in 1941 and

on the 31st day of August 1945 this sealed parcel was received by the said Piccadilly W. 1. Branch from such Harrogate Branch. The said parcel was retained unopened in the Piccadilly W. 1. Branch until the death of the said Charlotte Cameron on the 9th day of December 1946."

According to the answer to Interrogatory 41, the letter to Wm. H. Anderson was contained

"in the sealed parcel lodged in 1945 referred to in the reply to Interrogatory No. 9."

This is confirmed by a written stipulation entered into at the hearing on April 20, 1960, which also states that the bank employees did not know "what was in the sealed package"; that the bank had no "safe deposit boxes" and that "the deposit was the equivalent of a 'safe deposit' ".

■ The letter cannot be given the effect of an assignment of the Cameron claim in the bankrupt estate, because Mrs. Cameron did not execute any instrument in the bankruptcy proceedings assigning her claim to the Anderson group,

as required by General Order in Bankruptcy 21(2). The name of the trustee placed on the Anderson letter was not a notice of assignment. Nor is the letter effective as a direct assignment or gift *inter vivos* or *causa mortis* passing the title to the donee, because there was no immediate irrevocable transfer of the title to the donee and the donor did not relinquish all present right of control over the thing given. Cal.Civil Code, §§ 1146–1150; Hart v. Ketchum, 1898, 121 Cal. 426, 428–430, 53 P. 931; Estate of Hall, 1908, 154 Cal. 527, 531–534, 98 P. 269; Union Mutual Life Insurance Co. v. Broderick, 1925, 196 Cal. 497, 502–503, 238 P. 1034; Garde v. Goldsmith, 1928, 204 Cal. 166, 267 P. 104; Morehead v. Turner, 1940, 41 Cal.App.2d 414, 421, 106 P.2d 969; Foltz v. First Trust & Savings Bank of Pasadena, 1948, 86 Cal.App.2d 59, 62, 194 P.2d 135; Rolinson v. Rolinson, 1955, 132 Cal.App.2d 387, 390–391, 282 P.2d 98.[1]

The stipulation already alluded to states that Mrs. Cameron "had the right to withdraw the package and any documents or other property deposited."

The letter was not a *separate* letter bearing *identifying* marks with irrevoca-

---

1. As stated in Rolinson v. Rolinson, supra, 132 Cal.App.2d at page 390, 282 P.2d 98, 100.

"A promise to make a gift does not accomplish a transfer of title so as to constitute the promisee the owner of the property. (Burke v. Bank of America, 34 Cal.App.2d 594 [94 P.2d 58]; Hart v. Ketchum, 121 Cal. 426 [53 P. 931]; Beebe v. Coffin, supra, 153 Cal. 174, 94 P. 766)"

A recent case gives this summary of the law on the subject:

"An examination of the law, however, demonstrates that the only basic distinction between the two types of gifts is that a gift *causa mortis* is revocable if the donor lives, while a gift *inter vivos* is not. But other than this, the basic rules applicable to the two types of gifts are the same. In Beebe v. Coffin, 153 Cal. 174, 177 [94 P. 766], it is stated: '[I]t cannot be too clearly borne in mind that the single vital distinction between a gift *causa mortis* and a gift *inter vivos* is that the former, being in its nature testamentary, is subject to the donor's revocation while he

lives. But the essential of delivery, of the immediate surrender of all dominion and control over the subject of the gift, is as absolutely necessary in the one class of gifts as in the other. Falling short of such unconditional delivery, a gift is incomplete. If the transfer of such dominion and control is postponed to some future date, as until the date of the death of the donor, it becomes thereby no more than an unexecuted and unenforceable promise to make a future gift. [Citations] * * * If, on the other hand, the thing given remains under the control of the donor, or, except in the case of a gift *causa mortis*, is subject to his revocation, his gift is not complete. *There is no difference, however, in this particular between a gift inter vivos and a gift causa mortis. In either case is not complete unless there is an actual or symbolical delivery to the donee of the thing to be given.*' (Emphasis added.) (See also Knight v. Tripp, 121 Cal. 674 [54 P. 267].)" Berl v. Rosenberg, 1959, 169 Cal.App.2d 125, 130, 336 P.2d 975, 977 (Emphasis in text).

ble direction to deliver, on death, as was the case in Ruiz v. Dow, 1896, 113 Cal. 490, 496–498, 45 P. 867 and other cases relied on by the petitioner on review.[2] On the contrary, it was contained, as also appears from the answer to Interrogatories 44 and 45, in a sealed package with jewelry and another letter addressed to a physician. Mrs. Cameron had control over the contents until her death. Only after her death, when the outside package was opened was the envelope containing the Anderson letter revealed. Until then, as the stipulation states, the bank's employees did not know "what was in the sealed package". So there was no delivery, actual or symbolic, of either the letter or the money so as to make the act of Mrs. Cameron an assignment or completed gift to the late William H. Anderson.

■ While under California law a moral obligation "originating in some benefit conferred upon the promisor, or prejudice suffered by the promisee is also a good consideration for a promise", because a good and valid consideration once existed (Cal.Civil Code, § 1606; Estate of McConnell, 1936, 6 Cal.2d 493, 498, 58 P.2d 639; Wilson v. Wilson, 1960, 54 Cal.2d 264, 271–272, 5 Cal.Rptr. 317, 352 P.2d 725), this is not the situation here.

■ The letter is not a promise to pay for services rendered or to be rendered. As the words were not sufficient to amount to an assignment of the claim, in whole or in part, and California does not give to attorneys a lien for their services upon monies to be recovered for the benefit of clients (Gage v. Atwater, 1902, 136 Cal. 170, 172–173, 68 P. 581; Rosenberg v. Lawrence, 1938, 10 Cal.2d 590, 75 P. 2d 1082), the bankruptcy court would be without jurisdiction to award attorneys'

2. In the cited case a deed was executed by a person conveying certain real and personal property, including a promissory note, to his wife with direction that the deed

"is to be inclosed in an envelope, and deposited for safe-keeping in the First National Bank of Santa Barbara, with an indorsement on said envelope directing that at my decease the then cashier or president of said bank shall, at the request of my said wife, immediately file this deed for record with the recorder of said county of Santa Barbara." (Ruiz v. Dow, supra, 113 Cal. at page 494, 45 P. at page 868)

In the circumstances the Court held that the deed passed title to the note, saying:

"The donor relinquished all present right and control over the note when he made the deed and delivered it to the cashier of the bank, and by the same act he also placed the right of possession of the note beyond himself. The delivery of the deed to the third party operated to accomplish both of these results." (Ruiz v. Dow, supra, 113 Cal. at page 496, 45 P. at page 869) (Emphasis added).

Similarly in Coward v. De Cray, 1918, 38 Cal.App. 290, 176 P. 56, a woman endorsed certain stock certificates to a niece, delivered them to her attorney with direction to hold them until her death and then give them to the niece. The Court held that

"The effect of such a delivery is to vest a present title in the grantee subject to a life interest in the grantor." 38 Cal.App. at page 292, 176 P. at page 57 (Emphasis added).

In Gordon v. Barr, 1939, 13 Cal.2d 596, at page 603, 91 P.2d 101, 104, the Court sustained the assignment of certain mortgages where the record showed a clear intent that they were to go to the assignee upon the death of the assignor, and that "the assignments unqualifiedly divested the donor of title".

In each of these cases, and others relied on by the petitioner on review, there was an irrevocable delivery to a third person with positive donative direction that specific personal property be delivered to a certain person whose name was in a written instrument or in verbal directions given to the third person. In the case before us the letter was contained in a sealed, unmarked package with jewelry and a letter addressed to another. Only Mrs. Cameron knew what was in the package. So the situation is entirely different, factually and legally.

fees in lieu of the claim as requested by the Anderson group.[3]

So the complaint of counsel for the Anderson group that the findings merely state that services were rendered, without evaluating them, loses all significance. For the court was not in a position, in this proceeding, to award to them attorneys' fees which, if a claim at all, would be a claim against the estate of Mrs. Cameron, which, absent a total or partial assignment, could not be enforced in this court against the approved claim.

I realize the problems and disappointments which matters of this character, arising in an estate which remained in process of administration for a long period of time, may occasion. Having handled many matters in it, I know that, during such pendency, no one knew whether the debts would be paid. Ultimately, through wise administration, the debts were paid. It is understandable that while the estate was in the process of administration the receiver or the trustee might have shown an attitude which led the Anderson group to believe that their claim might, somehow, be recognized. But there is nothing in the record and the extensive correspondence, certified by the Referee in his "Supplement", which could be legally construed as establishing an estoppel against the trustee or the executor of the Will to claim the amount of this claim for Mrs. Cameron's estate. See, Ott v. Thurston, 9 Cir., 1935, 76 F.2d 368, 369; In re J.A. M.A. Realty Corp., 2 Cir., 1937, 92 F.2d 3, 8.

It follows that the order of the Referee must be and is hereby affirmed. The findings of the Referee are hereby adopted as the findings of the Court.

Formal order to follow to be prepared by counsel for the trustee and respondent.

3. The case relied on to the contrary, Central Loan Co. v. Russell, 5 Cir., 1926, 16 F.2d 35, 36, arose under Texas law which gives to an attorney employed to collect a promissory note a lien upon the fee stipulated in the note which the maker agrees to pay in case the note is sued on. So the court correctly held that an attorney who had been employed by a corporation to collect a promissory note in a bankruptcy proceeding had a lien upon the dividend due to the corporation "arising from his services in the bankruptcy proceedings." But the court also held that "fees due for services in other cases could not be a lien". At page 36.